ANDREW TOUSSAINT AND ISELA C. TOUSSAINT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Toussaint v. Commissioner
Docket No. 19883-81.
United States Tax Court
T.C. Memo 1984-25; 1984 Tax Ct. Memo LEXIS 652; 47 T.C.M. (CCH) 913; T.C.M. (RIA) 84025; January 11, 1984. *652 Held, addition to tax for fraud determined. Dougal C. Pope, for the petitioner. Bernard b. Nelson and Sheri A. Wilcox, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the years and in the amounts set forth: Additions to Tax
Taxable Year
Tax
Section 6653 (b) [1]
1971
$1,958.64
$979.32
1972
2,023.30
1,016.15
1973
3,113.00
1,556.50
1974
4,036.69
2,018.35
1975
5,184.08
2,592.04
Petitioners have stipulated that they will not dispute the disallowance of the $190,000 theft loss or the net operating loss carrybacks for taxable years 1971, 1972 and 1973, or the net operating loss carryforward for the 1975 taxable year. Furthermore, it has been stipulated that the deficiency for the 1975 taxable year has been timely assessed and thus, the petitioners owe the deficiency for the 1975 year. The remaining issues for decision are as follows: (1) Was petitioners' claim of a $190,000 theft loss for the 1974 taxable year fraudulent so that the statute of limitation on assessment *653 remains open, making them liable for the deficiency for that year, and an addition to tax under section 6653(b); (2) provided we find for respondent on issue number one so that the 1974 taxable year statute of limitations is open and thus the statute of limitations for assessment for the 1971, 1972 and 1973 carryback years are also open, [2] *654 are petitioners liable for the section 6653(b) additions to tax on the deficiencies produced by the tentative refund for the taxable years 1971, 1972 and 1973; and (3) are petitioners liable for an addition to tax under section 6653(b) for the 1975 taxable year because the net operating loss generated by the 1974 theft loss was also carried forward to the 1975 taxable year. FINDINGS OF FACT Some of the facts have been stipulated. Petitioner husband resided in Houston, Texas, when he filed the petition in this case. Andrew and Isela Toussaint were married on or about July 10, 1968, and have been husband and wife through 1982 but have been separated and lived apart most of the time since January 1974. Petitioners, cash basis, calendar year taxpayers, filed joint Federal income tax returns for taxable years 1971 through 1975. Based upon a net operating loss created by reason of a claimed theft loss in the 1974 taxable year, petitioners filed an Application for Tentative Refund (Form 1045) on April 15, 1975. In response to the application, petitioners received a tentative refund in the following amounts for the following taxable years: Year
Income Taxes Refunded
1971
$1,958.64
1972
2,032.30
1973
3,113.00
Petitioners filed their income tax return for the 1975 taxable year on or before April 15, 1976, and claimed a net operating loss deduction that was created by reason of the claimed theft loss in the 1974 taxable year. *655 The statute of limitations for assessing this 1975 taxable year was extended by petitioners' signing Forms 872 (Consent to Extend the Time of Assess Tax), the last of which expired on December 31, 1981. A timely statutory notice of deficiency was sent to petitioners on May 26, 1981, for the 1975 taxable year. The three-year statute of limitations on assessment for the 1974 taxable year has run and the year is closed unless it is open under section 6501(c)(1) by reason of the filing of a false or fraudulent return. [3]
Petitioner husband (Toussaint) worked for the Internal Revenue Service, first as a tax auditor from 1970 until December 1972 and then as a tax agent for the remaining years in question. Toussaint has had extensive education and experience in various areas of the tax law. He attended and graduated from Durham College in El Paso, Texas, in May of 1969, during which he took at least 64 semester hours of accounting. During his employment with the Internal Revenue Service, his training included the study of the taxation of individuals and specifically included casualty losses, theft losses and determination of basis. Toussaint advanced quickly in *656 his career at the Internal Revenue Service and began teaching courses in tax to other agents beginning in 1974. The subject of the alleged theft loss deduction in this case is a framed wall decoration (the Painting) alleged to be an original painting by Pablo Picasso. [4] This Painting was obtained in some unknown fashion by Toussaint's grandfather. Prior to the grandfather's death in 1949, he indicated to Toussaint, who was then a child, that Toussaint was to have the Painting. [5] After the grandfather died, the Painting was stored in the attic of Toussaint's mother's home in Lake Charles, Louisiana, from 1949 until 1970, when Toussaint took possession of it and transported it to his residence in Houston, Texas. Toussaint's mother had no knowledge of the existence of the Painting or the fact that Toussaint took possession of it in 1970. Prior to the removal of the Painting from his mother's house, petitioner wrapped the Painting in brown wrapping paper in order to safely transport it to his home in Houston. The Painting, in its brown wrapping paper cover, ended up in a hall closet in Toussaint's home and it is uncertain whether it was ever unwrapped from that time until the alleged *657 theft occurred. [6] At approximately 6:40 p.m. on July 9, 1974, Toussaint reported to the Houston police that his home has been burglarized at approximately 1 a.m. that day, about 17 hours prior to the making of the police report. Toussaint informed the police that three items had been stolen: A car battery valued at approximately $27, a brown suit valued at $210, and a Pablo Picasso painting of an unknown value. Toussaint described the Painting to the police as depicting a boat on an island. [7] No other details were reported to the police. The house contained at that time other furniture and furnishings, including a color television set, none of which were reported stolen in the burglary. On July 3, 1974, *658 six days prior to the alleged burglary, Toussaint wrote to Turner Galleries in Dallas, Texas, requesting information with respect to the possible sale of a valuable oil painting, not otherwise described. After the alleged burglary, he placed reward advertisements in local publications requesting the return of the Painting and on January 10, 1975, he wrote to the Houston police department requesting a progress report on the investigation. At some time after the alleged burglary and prior to the filing of his 1974 tax return, Toussaint went to the Houston public library and obtained information on various Pablo Picasso paintings and their current estimated value. Based on this information, Toussaint himself placed a value on the Painting as of the date of the alleged burglary of $190,000. On Toussaint's 1974 joint income tax return, he claimed a theft loss deduction in the amount of $190,000. A schedule attached to the tax return described the items stolen as follows: Items Taken - In July 1974 my home was broken into. Men clothing [sic] - suits Stero [sic] Batteries - Auto * Painting * Total value - $190,000.00 * By Pablo Picasso Police Report # F-10361, Houston Police Dept. No *659 insurance on Painting No recovery by Police Dept. as of yet [8]
During 1974 Toussaint was separated from his wife and for at least a portion of that time Mrs. Patricia Samples (then Patricia Henderson) lived with Toussaint in his Houston home. Mrs. Samples was and now is an employee of the Internal Revenue Service. She was away from the Houston home on July 9, 1974, the date of the alleged burglary. She was not informed by Toussaint while she was away or after her return of the fact of the alleged burglary. While she was aware of a brown paper package in the hall closet, she never saw its contents. We find that prior to the alleged burglary petitioner Andrew Toussaint never owned a Pablo Picasso painting or any other painting of comparable value. We further find that Toussaint did not own a stereo set immediately prior to the alleged burglary and there was no such item situated in his home on the day of the alleged burglary. Petitioners' 1974 *660 income tax return was false and fraudulent in that petitioners falsely claimed a theft loss in the amount of $190,000 referable to an alleged Pablo Picasso painting allegedly stolen from Toussaint in July 1974, which Toussaint knew to be false. We further find that the schedule attached to his 1974 income tax return, above referred to, was false in that it claimed a stereo had been stolen in the alleged burglary. By claiming this fraudulent theft loss deduction, Toussaint created an underpayment of tax on his 1974 return that was due to fraud with intent to evade tax. OPINION In stipulations, petitioners have abandoned any claim for theft loss in the amount of $190,000 on their 1974 income tax return. Similarly, they have stipulated that they do not dispute the deficiencies attributable to the net operating loss carried back to the 1971, 1972 and 1973 taxable years and the net operating loss carried forward to the 1975 taxable year, subject, however, to their claim that the statute of limitations bars assessment for the years 1971 through 1974. We are left to determine whether the deficiencies for 1971, 1972, 1973 and 1974 are barred by the statute of limitations and whether a fraud *661 addition to tax is applicable to the deficiencies for 1971, 1972, 1973, 1974 and 1975. If the 1974 theft loss deduction is fraudulent as we have found, we must further determine if a fraud addition to tax can be applied to the deficiencies created in the years to which carryovers were applied. With respect to the issue of fraud for the taxable years at issue, the respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.To prove fraud, it must be shown that petitioners intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent the assessment and collection of such taxes. Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968). Whether an understatement of income is due to fraud is a question of fact. Otsuki v. Commissioner,53 T.C. 96, 105 (1969). The existence of fraud is to be determined from consideration of all the facts and circumstances. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Fraud may be established by showing an overstatement of deductions, as well as by the omission of income. Neaderland v. Commissioner,52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cirm. 1970), *662 cert. denied 400 U.S. 827 (1970). The controversy in this case stems from the alleged occurrence of a burglary at Toussaint's home on July 9, 1974. Both before and after the date of the alleged burglary, Toussaint lived with Patricia Samples. On the date the alleged burglary supposedly occurred, Mrs. Samples was away from home on travel. Every night while she was away from home on travel, Mrs. Samples conversed with Toussaint. He never informed her of the alleged burglary during their telephone conversations or at any time after she returned home from her travel. [9] *663 Toussaint's behavior towards Mrs. Samples with respect to the burglary along with the many other unanswered questions in this case sheds boubt as to whether a burglary ever occurred. However, because of the scant evidence in the record we do not make a finding as to whether the burglary occurred. When preparing his return for the 1974 taxable year, Toussaint took a sizeable deduction of $190,000 that was solely attributable to the Painting which he valued at $190,000. However, on a schedule attached to his 1974 return he listed the following items: Men clothing [sic] - suits Stero [sic] Batteries - Auto * Painting * Total value - $190,000.00 * By Pablo Picasso During trial, Toussaint testified that numerous suits and automobile batteries were stolen from him on July 9, 1974, but this testimony is in direct contradiction to the report he gave police on July 9, 1974. On the day of the alleged burglary, Toussaint reported that one man's suit valued at $210 and one automobile battery valued at $27 had been stolen. [10]
In addition to the suits and batteries, Toussaint claimed that a stereo that he kept in his living room also had been stolen. However, Toussaint had no records of having purchased such a stereo and could not describe any detail about it. According to Toussaint *664 the alleged stereo had been kept in the living room in plain view for a period of time prior to the alleged burglary, but Mrs. Samples had never seen it. It is clear that Toussaint never owned but, nevertheless, listed on the schedule the stereo as among the items stolen. [11]
Finally, the last item that Toussaint listed on his 1974 schedule was an allegedly valuable painting by Pablo Picasso. The only evidence of the existence of such a painting is the self-serving statements of Toussaint and Mrs. Toussaint and Mr. Cobb, [12] *665 a friend of Toussaint's. As is clear from the above discussion, Toussaint was a totally noncredible witness and no assistance can be obtained from his testimony.We do not believe the supporting testimony of Mrs. Toussaint or of Mr. Cobb. Although Toussaint did have a brown paper package stored in his hall closet as confirmed by Mrs. Samples, we are satisfied it was not an original Pablo Picasso painting. We recognize that mere failure to believe Toussaint's testimony does not discharge respondent's burden of proof as to fraud. [13] Thus, notwithstanding our finding that Toussaint never owned a valuable painting, we think it desirable to explain that his tax return would have been fraudulent even if the Painting had been a Picasso. The other circumstances of this case are sufficient to meet respondent's burden of proof. When determining whether Toussaint's conduct was fraudulent, his extensive tax experience is relevant for us to consider. See Green v. Commissioner,T.C. Memo. 1981-577; Langlois v. Commissioner,T.C. Memo. 1955-56. Toussaint had considerable experience with the tax law and specifically with theft and casualty losses and provisions governing the determination of tax basis. By the time Toussaint prepared and filed his 1974 tax return, he had had the benefit of several years' work, first as an Internal Revenue Service tax auditor and later as an Internal Revenue Service tax agent. He had advanced quickly in his career and had developed a sufficient understanding of the tax law to be allowed in 1974 to *666 teach tax courses to other agents. Section 165 provides guidelines for what may be deducted as theft loss and how to determine the amount of such deduction. Generally, there is allowed a deduction for any loss sustained during the taxable year that is not compensated by insurance or otherwise if such loss arises from theft. The amount of such deduction is limited to the lesser of the adjusted basis of the property for determining loss or its fair market value on the date of the loss. [14] In the case of gift property, the adjusted basis for determining loss for the donee is the lesser of the donor's basis or its fair market value on the date of the gift. [15] If the facts necessary to determine the basis of the property in the hands of the donor or the last preceding owner by whom it was not acquired by gift cannot be obtained, the donee's basis in such property is the fair market value of such property on the date such property was acquired by the donor or such last preceding owner. [16] Once the appropriate amount is determined above, such amount is deductible to the extent it exceeds $100. In *667 this case and by Toussaint's own account he obtained the Painting from an indigent grandfather. If we assume the grandfather did not acquire the Painting by gift, Toussaint's basis as donee would have been the lesser of his grandfather's basis or the fair market value of the property on the date of this gift, again the lesser of the adjusted basis or fair market value as of 1949 or prior thereto. In no event could Toussaint's basis exceed the 1949 value. How the grandfather acquired the Painting was and is unknown. Nevertheless, Toussaint had a duty to determine his own basis, that is, his grandfather's basis or the Painting's value on the date of the gift, presumably 1949. If he could not determine that basis he was obliged to follow the gift guidelines for determining basis. We have already emphasized the special knowledge Toussaint, as a revenue agent, had acquired and its concomitant obligation. See Green v. Commissioner,supra. As an agent he had specifically studied the casualty-theft loss and basis sections.Even if Toussaint had received or thought he had received the Painting from his grandfather by inheritance rather than by gift, his basis would be the 1949 value. [17] *668 Regardless of the manner in which Toussaint obtained the Painting from his grandfather, his adjusted basis for the purpose of deducting a theft loss would not have approximated the fair market value of the Painting on July 9, 1974, the date Toussaint alleges it was stolen because dollar values differed greatly between 1949 and 1974. Any deduction to which Toussaint was entitled for the alleged theft loss was limited to the 1949 value which we judicially know to have been lower than the 1974 value. The record is clear that Toussaint made no attempt whatsoever to determine his adjusted basis in the Painting. Moreover, theft loss of property not used in a trade or business or for the production of income is deductible only to the extent it exceeds $100. Toussaint did not even reduce the $190,000 by the $100 floor amount. He intentionally disregarded the rules and intentionally deducted a substantial sum in order to reduce his tax liability to zero for 1974 and for the years to which the resulting net operating loss carryovers applied. This is fraudulent conduct with *669 the intent to evade the payment of taxes. For the 1974 taxable year, Toussaint's intentions were to evade taxes by fraudulently deducting $190,000 and thereby creating an underpayment, but he went further than the 1974 fraudulent return. He filed Form 1045, fraudulently claiming a tentative refund based upon carrying back the unused portion of the deduction as a net operating loss, thereby recovering the taxes he had paid for the 1971, 1972 and 1973 taxable years. Finally, the unused portion of the net operating loss was carried forward to the 1975 taxable year. This fraudulent claim in his 1975 income tax return reduced his tax liability for that year to zero. Because the return for the 1974 year was false and fraudulent the statute of limitations for assessment remains open. Section 6501(c). The addition to tax under section 6653(b) applies for the 1974 taxable year, the year of the loss creation. The deficiencies produced by the Application for Tentative Refund are assessable for a period coextensive with the period with respect to the taxable year of the claimed loss. Section 6501(h). Since the year of the claimed loss is open by reason of fraud, [18] the assessment period *670 is also open as to the 1971, 1972 and 1973 taxable years to the extent the deficiencies are attributable to the net operating loss carryback. A deficiency for a taxable year is defined as "the amount by which the tax imposed by subtitle A" exceeds the tax as shown on the taxpayer's return for such year as decreased by rebates and increased by prior assessments or amounts collected without assessment. Section 6211(a). In section 6662[19] *671 tax is defined as including the additions to tax. The term "deficiency" as used in section 6501(h) must be understood to include the addition to tax for fraud under section 6653(b). In this case petitioners are liable for the underpayments for the carryback years which include the amount of the carryback produced by the net operating loss and the addition to tax under section 6653(b) attributable to such carrybacks. The statute of limitations is open for the 1975 taxable year because a statutory notice was sent within the limitations period as extended by Forms 872 that were executed by petitioners. Petitioners are liable for the underpayment in the 1975 taxable year and the addition to tax for fraud under section 6653(b). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Petitioners filed an Application for Tentative Refund (Form 1045 for the 1971, 1972 and 1973 taxable years). Because of petitioners' receipt of a tentative refund produced by carrying back a net operating loss generated by the 1974 theft loss, the years 1971, 1972 and 1973 are automatically reopened pursuant to sec. 6501(h) and are assessable under the rules applicable to the 1974 loss creation year to the extent of the amounts attributable to the net operating loss carryback of the 1974 taxable year. The application of sec. 6501(m) is not discussed because this situation is adequately addressed under sec. 6501(h)↩.
3. See footnote 2, supra.↩
4. We use the descriptive term "Painting" for the sake of convenience and not as a term of art. ↩
5. Toussaint speculated that his grandfather might have stolen the Painting. ↩
6. Only two people other than Toussaint claimed in testimony to have seen the Painting. As discussed below, we consider the credibility of these witnesses to be highly doubtaul.↩
7. During the preparation for trial, and at trial, Toussaint gave various other descriptions of what was depicted in the Painting, i.e., a lady.↩
8. During the trial Toussaint explained that a number of suits, several car batteries, a painting and a stereo were stolen on July 9, 1974. He did not satisfactorily explain why these additional items were not reported to the police as stolen.↩
9. We recognize that as an employee of the respondent, Mrs. Samples may have felt some compulsion to cooperate in this investigation and trial. Notwithstanding, we concluded that she was a sincere and forthright person and that in her testimony she was endeavoring to recount her best recollection without prejudice or favor to either side.Her testimony is entitled to complete credence.
10. We are at a loss to understand why the suit or suits and battery or batteries and the stereo set were not valued for purposes of the tax return.↩
11. Since no deduction was attributed to this item, it did not contribute to the deficiencies. Nevertheless, this item alone made the return false. See sec. 7206(1).↩
12. Although Mr. Cobb claimed to be familiar with Picasso art, he could not recall any of the details of the Painting.
13. See Guinn v. Commissioner,T.C. Memo. 1983-401↩.
14. Secs. 1.165-8 and 1.165-7, Income Tax Regs.↩
15. Sec. 1.1015-1(a)(1), Income Tax Regs.↩
16. Sec. 1.1015-1(a)(3), Income Tax Regs.↩
17. See sec. 1014 (formerly sec. 113(a)(5) of the Internal Revenue Code of 1939), and sec. 1.1014-1, Income Tax Regs.↩
18. See H. Rept. No. 2161, 89th Cong; 2d Sess. (1966), 1966 C.B. (Vol. 2) 902, 904.↩
19. Sec. 6662 (formerly designated as sec. 6659 of the Internal Revenue Code of 1954 for the years at issue in this case) provides in part: (a) Additions Treated as Tax.--Except as otherwise provided in this title-- (1) The additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes; (2) Any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.↩