ARC ELECTRICAL CONSTRUCTION CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ARC Electrical Constr. Co. v. Commissioner
Docket No. 20563-82
United States Tax Court
T.C. Memo 1990-30; 1990 Tax Ct. Memo LEXIS 30; 58 T.C.M. (CCH) 1235; T.C.M. (RIA) 90030; January 17, 1990
*30 R allowed P a tentative new jobs credit of $ 100,000 for 1977. On its 1977 return, P fraudulently overstated cost of goods sold and reported a tax liability (before credits) of $ 44,324. P utilized $ 44,324 of the new jobs credit in 1977 and claimed a tentative carryback of the $ 55,676 balance to 1974. P also suffered a $ 6 million embezzlement loss in 1980, which could be carried back to 1977. P moved to vacate our decision entered with respect to the 1974 taxable year. We previously held in part that since P fraudulently understated its taxable income in 1977 due to overstating its cost of goods sold in that year, it also fraudulently filed Form 1139 seeking a refund for the 1974 taxable year using the jobs credit partially unused in the 1977 taxable year. Arc Electrical Construction Co. v. Commissioner, T.C. Memo. 1988-592. Held, the base for computing the 50-percent addition to tax for fraud is undiminished by any subsequent carryback. Petterson v. Commissioner, 19 T.C. 486 (1952), followed. Held further, P does not have the option of carrying the new jobs credit forward where sec. 53(c), I.R.C., requires *31 that it be carried back. Held further, P's entitlement to a carryback under sec. 53(c), I.R.C., in excess of the tentative carryback claimed under sec. 6411(a), I.R.C., due to our finding of an embezzlement loss in 1980, does not eliminate the deficiency in 1974. Held further, upon reconsideration of our earlier opinion, we find that P is not liable for the addition to tax for fraud in 1974, because the credit carried back was not itself fraudulent. Toussaint v. Commissioner, T.C. Memo. 1984-25, affd. 743 F.2d 309 (5th Cir. 1984), distinguished. Our decision entered for the 1974 taxable year is vacated. *32 Paul Friedman, for the petitioner. Kevin M. Flynn, for the respondent. PARR
SUPPLEMENTAL MEMORANDUM OPINION PARR, Judge: This matter is before us on petitioner's motion to vacate. *33 On December 29, 1988, we filed our Memorandum Findings of Fact and Opinion in this case. Arc Electrical Construction Co. v. Commissioner, T.C. Memo. 1988-592. *34 We held that (1) petitioner suffered a $ 6 million embezzlement loss in 1980, which could be carried back to 1977, and (2) the determined deficiencies in tax for 1977 and 1974 were attributable to fraud. With respect to our finding of fraud for 1974, we stated: The deficiency for the 1974 taxable year is due to the disallowance of a job credit carryback from 1977. Respondent alleges that since petitioner fraudulently understated its income in 1977 due to overstating its cost of goods sold in that year, it also fraudulently filed a Form 1139 seeking a refund for the 1974 taxable year using a jobs credit partially unused in the 1977 taxable year. Respondent claims that since the act of understating income in 1977 was fraudulent the subsequent act of seeking a refund through the use of a jobs credit carryback from 1977 to 1974 was also fraudulent. Petitioner's only defense to respondent's assertion is that there was no fraud. We agree with respondent. Petitioner knowingly understated its income in 1977. It was fraudulent for petitioner to subsequently try to carry back a partially unused job credit which was only unused because of the fraudulent understatement of income. * * *35 * [Arc Electrical Construction Co. v. Commissioner, T.C. Memo. 1988-592, 56 T.C.M. 975-3, 983-984, 57 P-H Memo T.C. par. 88,592 at 3070.] We withheld entry of decision under Rule 155 [1] for the purpose of permitting the parties to submit computations pursuant to our determination of the issues. On April 19, 1989, respondent's computation for entry of decision was filed with the Court. On May 9, 1989, petitioner filed notice of objection to respondent's computation, together with an alternative computation. Both respondent's and petitioner's computations provided for an overpayment of tax of $ 31,769 in 1974. However, respondent's computation provided for an addition to tax under section 6653(b) of $ 27,884 in 1974, while petitioner's alternative computation provided for no addition to tax. On May 11, 1989, we ordered respondent to submit a detailed explanation of his computation for the 1974 taxable year, since it appeared that he was allowing petitioner *36 to carry back a 1977 jobs credit to 1974, the disallowance of which was the basis for the 1974 deficiency and addition to tax under section 6653(b). On May 31, 1989, respondent filed a motion to amend his computation for entry of decision together with a memorandum in support of such motion. Respondent's amended computation was exactly the same numerically as the first computation, although it provided additional explanation. The amended computation for the 1974 taxable year stated: Tax liability, computed with-
out allowance for 1980 net
operating loss carryback to
1977, which creates a new jobs
credit carryback from 1977 to
1974.
$ 87,445.00
Tax assessed and paid
March 15, 1975 (statutory date)
$  94,722.00 December 10, 1975
13,148.00 Total payments
$ 107,870.00 Less: refund
March 15, 1975 (statutory date)
(    20,425.00)
Less: tentative allowances
August 14, 1978
(     5,676.00)
November 27, 1978
(    50,000.00)
Total refunds and tentative
allowances
($  76,101.00)
Net tax assessed and paid
31,769.00
Deficiency, without allowance for
net operating loss carryback from
1980 to 1977, and new jobs credit
carryback from 1977 to 1974
$ 55,676.00
Tax liability, computed with-
out allowance for 1980 net
operating loss carryback to
1977, which creates a new jobs
credit carryback from 1977 to
1974
$ 87,445.00
Reduction in liability due to
new jobs credit carryback from
1977 to 1974
87,445.00
Tax liability after carryback
-0-  Net tax assessed and paid
31,769.00
Overpayment
$ 31,769.00
*37 * * * Addition to tax under
I.R.C. § 6653(b) (to be assessed) $ 27,884.00
On June 6, 1989, we granted respondent's motion to amend his computation. On June 7, 1989, we entered decision in this case finding an overpayment of tax of $ 31,769.00 and an addition to tax under section 6653(b) of $ 27,884.00 for 1974. On June 15, 1989, petitioner filed a motion to vacate the decision entered June 7, 1989. Petitioner's motion to vacate states in pertinent part: 7. Respondent in a memorandum in support of his amended computation misstated a material fact. In the opening paragraph, respondent states that the Court found fraud, in its opinion, that Arc * * * fraudulently filed its 1974 federal income tax return with the intent to evade tax. The Court made no such finding and respondent was informed by petitioner to notify the Court of the error, but chose not to do so. * * * 13. If petitioner had never filed for a tentative allowance due to a new jobs credit carryback, it would be entitled to the carryback and a refund of all tax paid with the return. 14. Any penalties asserted against the petitioner are really based on the time of discovery of the *38 embezzlement so that if the discovery of the embezzlement were made in 1977, there would not have been any penalty in 1977 and in 1974. 15. Petitioner believes that since the return of petitioner was not fraudulently originally filed and it is entitled to a total refund of the tax as shown on the return based upon a new jobs credit carryback from 1977, which it is entitled to as a matter of law, there is no deficiency on which to base any penalty. * * * 19. By asserting the fraud penalty for the calendar year 1974, the Court is placing the petitioner in the position of being jeopardized twice. Since the new jobs credit carryback is absorbed in 1974, it is not available as a carryover to the year 1978 and subsequent years where respondent is going to assert the fraud penalty. To the extent it would have been available in subsequent years, any asserted fraud penalty would be reduced to the extent of the available jobs credits. * * * Petitioner's motion to vacate raises a number of different arguments which we will address separately. First, petitioner appears to argue in paragraph 15 of its motion to vacate that the new jobs credit carryback from 1977 to 1974 should reduce *39 the underpayment to which the 50-percent fraud addition is applied in 1974. We disagree. The base for computing the 50-percent addition to tax for fraud is undiminished by any subsequent carryback. Petterson v. Commissioner, 19 T.C. 486 (1952). "[T]he unforeseen circumstance that a carry-back later arises to offset the deficiency should not operate to relieve the taxpayer of the addition imposed for the fraud." Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 196 (1953), affd. 216 F.2d 693 (1st Cir. 1954). Petitioner's second argument stems from its first argument. The jobs credit carryback from 1977 to 1974 resulted in an overpayment of tax in 1974 of $ 31,769, but at the same time there was an underpayment of $ 55,676 to which the 50-percent fraud addition was applied. "The basic principle to be found in prior case law would permit reduction for carryforward loss deductions and credits, but prohibit carryback loss deductions and credits, when computing additions to tax." See Blanton Coal Co. v. Commissioner, T.C. Memo. 1984-397. Petitioner's grievance seems to be that to the extent the jobs credit carryback *40 was allowed in 1974, it is unavailable as a carryover to be applied to 1978 and subsequent years where petitioner states respondent is going to determine the addition to tax for fraud. The simple response to petitioner's argument is that a taxpayer does not have the option of carrying a new jobs credit forward if the credit is able to be carried back. See sec. 53(c). [2] Since the carryback to 1974 is a result mandated by law, petitioner's argument must fail. *41 Third, petitioner points out in paragraph 13 of its motion that if it had never applied under section 6411(a)[3] for a tentative carryback adjustment of the tax due for 1974, it would still have been entitled to a refund of all tax paid for 1974 due to the carryback under section 53(c). We held in our earlier opinion that petitioner suffered a $ 6 million embezzlement loss in 1980, which could be carried back to 1977. The amount of embezzlement loss carried back to 1977 exceeded the disallowed cost of goods sold deduction claimed by petitioner in 1977. As a result, a lower amount of new jobs credit could be utilized in 1977 and more could be carried back to 1974. Accordingly, the amount of the deficiency in 1974 ($ 55,676) due entirely to the tentative carryback works out to be less than the amount of the credit carryback to which petitioner was actually entitled *42 to in 1974 ($ 87,445). This result, albeit unusual, is attributable to mathematical consequences of factoring in the embezzlement losses and not a misapplication of law. There is nonetheless a deficiency of $ 55,676 in 1974. Finally, however, petitioner indirectly makes an argument which we find persuasive and leads us to reconsider our finding of fraud for the taxable year 1974. In our earlier opinion, we found that the tax deficiency of $ 55,676 in 1974 was due to fraud. The entire deficiency in 1974 was due to the tentative allowance of $ 55,676 paid to petitioner in 1978 upon filing its application for a tentative carryback on Form 1139. Our finding of fraud was based upon the fact that since petitioner fraudulently understated its income in 1977 due to overstating its cost of goods sold in that year, it also fraudulently filed Form 1139 seeking a refund for the 1974 taxable year. In his memorandum in support of his amended computation, respondent cites Rev. Rul. 60-215, 1960-1 C.B. 642, amplified by Rev. Rul. 84-106, 1984-2 C.B. 312. Rev. Rul. 60-215 provides that the 50-percent addition to tax for fraud under section 6653(b) applies *43 to the deficiency assessed to recover an erroneous refund allowed as a result of a carryback adjustment under section 6411, if the adjustment was induced by fraud. The fraud carries over, and the 50-percent addition is applicable, to that deficiency. In Toussaint v. Commissioner, T.C. Memo. 1984-25, affd. 743 F.2d 309 (5th Cir. 1984), the taxpayers fraudulently claimed a theft loss on their 1974 return, and then fraudulently claimed a tentative refund for 1971, 1972, and 1973 by carrying back the unused portion of the loss as a net operating loss. Further, the taxpayers carried forward the unused portion of the net operating loss to 1975 and reduced their tax liability in such year to zero. We held in Toussaint that the taxpayers were liable for the addition to tax under section 6653(b) in each of the years 1971 through and including 1975. Our reasoning was as follows: The addition to tax under section 6653(b) applies for the 1974 taxable year, the year of the loss creation. The deficiencies produced by the Application for Tentative Refund are assessable for a period coextensive with the period with respect to the taxable year of the claimed *44 loss. Section 6501(h). Since the year of the claimed loss is open by reason of fraud, the assessment period is also open as to the 1971, 1972 and 1973 taxable years to the extent the deficiencies are attributable to the net operating loss carryback. A deficiency for a taxable year is defined as "the amount by which the tax imposed by subtitle A" exceeds the tax shown on the taxpayer's return for such year as decreased by rebates and increased by prior assessments or amounts collected without assessment. Section 6211(a). In section 6662 tax is defined as including the additions to tax. The term "deficiency" as used in section 6501(h) must be understood to include the addition to tax for fraud under 6653(b). In this case, petitioners are liable for the underpayments for the carryback years which include the amount of the carryback produced by the net operating loss and the addition to tax under section 6653(b) attributable to such carrybacks. * * * [Toussaint v. Commissioner, T.C. Memo. 1984-25, 47 T.C.M. 913, 918, 53 P-H Memo T.C. par. 84,025 at 111-112. Footnote references omitted.] Both Rev. Rul. 60-215 and Toussaint involved tentative *45 refunds attributable to operating loss carrybacks, while this case involves a credit carryback. While the operating loss and credit carryback rules are conceptually analogous, we think the facts present in this case are distinguishable from those in the cited authorities. In both Rev. Rul. 60-215 and Toussaint, the deficiencies in the carryback years were due to disallowed loss deductions. In this case, however, the new jobs credit in 1977, which was carried back to 1974, was not itself disallowed. Petitioner's 1977 return and respondent's notice of deficiency for the 1977 taxable year both state that petitioner was entitled to a "tentative" new jobs credit of $ 100,000 in 1977. See sec. 51(d). [4] The credit was tentative because section 53(a)[5] provides that the amount of new jobs credit allowed may not exceed the income tax liability for the year, reduced by the sum of certain specified credits. On its 1977 return, petitioner reduced its reported tax liability of $ 44,324 by a new jobs credit of an equal amount. Petitioner carried the balance of the new jobs credit of $ 55,676 ($ 100,000 minus $ 44,324) back to 1974 by filing Form 1139 and was tentatively *46 refunded an equal amount. *47 Respondent determined in his notice of deficiency for the 1977 taxable year that, due to the upward adjustments in taxable income, the full $ 100,000 of new jobs credit was utilized in 1977. In his notice of deficiency for the 1974 taxable year, respondent determined that there was a deficiency due to fraud of $ 55,676 -- the amount of the credit carryback. In Rev. Rul. 60-215 and Toussaint, the tentative carryback adjustments were due to fraud because they were based upon fraudulently claimed loss deductions. Accordingly, a finding of fraud would be appropriate in this case had petitioner fraudulently overstated the total jobs credit. See McIntyre v. Commissioner, T.C. Memo. 1988-97. In this case, however, the amount of the total jobs credit ($ 100,000) upon which the tentative carryback adjustment was based was correct. Petitioner did not report a total jobs credit in excess of what it was entitled to, but instead simply carried back credits to 1974 which should have been utilized in 1977 (before giving effect to the embezzlement loss carried back to 1977). While there was clearly a deficiency created in 1974 due to the carryback, we cannot *48 say that such deficiency was due to fraud. See King v. Commissioner, T.C. Memo. 1987-312. Accordingly, we hold that petitioner is not liable for the addition to tax for fraud in 1974. To reflect the foregoing, An appropriate order and decision will be entered. Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. SEC. 53. LIMITATION BASED ON AMOUNT OF TAX. * * * (c) CARRYBACK AND CARRYOVER OF UNUSED CREDIT. -- (1) ALLOWANCE OF CREDIT. -- If the amount of the [new jobs] credit determined under section 51 for any taxable year exceeds the limitation provided by subsection (a) for such taxable year (hereinafter in this subsection referred to as the "unused credit year"), such excess shall be -- (A) a new employee credit carryback to each of the 3 taxable years preceding the unused credit year, and (B) a new employee credit carryover to each of the 7 taxable years following the unused credit year, and shall be added to the amount allowable as a credit by section 44B for such years. If any portion of the excess is a carryback to a taxable year beginning before January 1, 1977, section 44B shall be deemed to have been in effect for such taxable year for purposes of allowing such carryback as a credit under such section. The entire amount of the unused credit for an unused credit year shall be carried to the earliest of the 10 taxable years to which (by reason of subparagraphs (A) and (B)) such credit may be carried, and then to each of the other 9 taxable years * * *.↩
3. SEC. 6411. TENTATIVE CARRYBACK AND REFUND ADJUSTMENTS. (a) APPLICATION FOR ADJUSTMENT. -- A taxpayer may file an application for a tentative carryback adjustment of the tax for a prior taxable year affected by * * * a new employee credit carryback provided in section 53(c)↩ * * * from any taxable year. * * *
4. SEC. 51. AMOUNT OF CREDIT. * * * (d) $ 100,000 PER YEAR LIMITATION ON CREDIT. -- Except as provided in subsection (e), the amount of the credit determined under this subpart for any employer (and the amount of the credit allowable by section 44B [i.e., the new jobs credit] to any taxpayer) with respect to any calendar year shall not exceed $ 100,000. ↩
5. SEC. 53. LIMITATION BASED ON AMOUNT OF TAX. (a) GENERAL RULE. -- Notwithstanding section 51, the amount of credit allowed by section 44B [i.e., the new jobs credit] for the taxable year shall not exceed the amount of the tax imposed by this chapter for the taxable year, reduced by the sum of the credits allowable under -- (1) section 33 (relating to foreign tax credit), (2) section 37 (relating to credit for the elderly), (3) section 38 (relating to investment in certain depreciable property), (4) section 40 (relating to expenses of work incentive programs), (5) section 41 (relating to contributions to candidates for public office), (6) section 42 (relating to general tax credit), and (7) section 44A (relating to expenses for household and development care services necessary for gainful employment). * * *↩