UNITED STATES of America, Appellee,

v.

Robert E. KELTNER, Appellant.

No. 80–5100.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1981.

Decided April 5, 1982.

Orville L. Hardman, Parkersburg, W. Va., for appellant.

R. Russell Mather, Tax Div., Dept. of Justice, Washington, D. C. (Stephen G. Jory, U. S. Atty., Elkins, W. Va., John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Robert E. Lindsay, Tax Div., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Appellant Robert Keltner was charged by a federal grand jury on January 25, 1980, with two counts of willfully attempting to evade his federal income taxes for the calendar year 1972 and the calendar year 1973, in violation of 26 U.S.C. § 7201, by filing false and fraudulent returns for those years. At trial the government used the net worth and personal expenditures methods of proof to show that appellant, an attorney, had received taxable income of $20,746.50 in 1972 and $111,547.85 in 1973, upon which there were taxes due of $6,063.51 and $62,037.50. His 1972 return, due April 15, 1973, but filed on March 22, 1974, reported a loss for tax purposes of $922.82 and no tax liability, although he inexplicably paid taxes of $196.75 for that year. His 1973 return, due April 15, 1974, but filed on July 4, 1975, reported taxable income of $2,376, and a tax liability of $792. According to the government's evidence, appellant had understated his tax liability by $5,866.56 in 1972, and $61,245.50 in 1973.

Appellant argued that he was entitled to additional deductions. not claimed on his returns, for net operating losses sustained by United Innkeepers, Inc., a Subchapter S corporation which he purchased in September, 1973. The informational return for the fiscal year ending August 31, 1974, due November 15, 1974, and filed by United Innkeepers on January 1, 1976 showed a net operating loss of $90,840.12, and the 1975 and 1976 returns, filed on April 17, 1980, and due respectively on November 15, 1975 and November 15, 1976, showed net operating losses of $86,606.70 and $63,744.47. He argued that the losses could be carried back to 1972 and 1973, thereby entirely eliminating any tax liability for those years.

The district court denied appellant's pretrial motion for acquittal and ruled that the evidence of United Innkeepers' losses could be admitted only to show appellant's lack of specific intent. After a jury trial appellant was found guilty on both counts, and the district court sentenced him to two concur-

rent five year sentences and fined him $10,-000.

Appellant contends that the district court should have permitted him to establish as a defense that, because of the net operating losses, he had no tax liability for 1972 or 1973. Additionally, he argues that the testimony of the government expert and the summary chart on which he relied should not have been admitted into evidence.

## I.

Appellant's argument relies heavily on the following sequence of events: in September, 1973, Keltner purchased United Innkeepers; on March 22, 1974, he filed his 1972 return; and on July 4, 1975, he filed his 1973 return. The returns were not fraudulent, he contends, because at the time they were filed he had, in fact, already incurred net operating losses which could be carried back, pursuant to 26 U.S.C. § 172, to eliminate any tax liability for 1972 and 1973.

It is uncontested that, in order to convict a defendant of tax evasion, the government must prove that he actually owed some tax in excess of the amount stated on his return. *E.g., Koontz v. United States,* 277 F.2d 53 (5th Cir. 1960); *Holt v. United States,* 272 F.2d 272 (9th Cir. 1959). It by no means follows that, if a subsequently incurred net operating loss can be carried back to eliminate a tax liability that existed at the time the return was required to be filed, the defendant may escape conviction by reason of the fortuity of a later loss that would reduce or eliminate misstatements of tax liability fraudulent when made.

The lucky loser argument was rejected in *Willingham v. United States,* 289 F.2d 283 (5th Cir. 1961), *cert. denied,* 368 U.S. 828, 82 S.Ct. 49, 7 L.Ed.2d 31 (1961). There the defendant admitted having claimed fictitious deductions during 1952 and 1953, but claimed, *inter alia,* that he should nevertheless be acquitted because a loss carryback from 1955 eliminated the 1953 liability. The court found that, although the defendant was entitled to deductions, he was not

relieved from criminal liability. The court stated:

A taxpayer may not, with impunity, willfully make false deductions in an attempt to evade the 1953 tax, and which has the actual effect of reducing the tax imposed for that year, after taking into account all deductions that are then available, whether claimed or not, because fortuitously in 1955 a loss occurs, which for tax purposes can be carried back to wipe out the 1953 liability.

We think the crime is complete when with willful intent, a false and fraudulent return is filed for a year as to which, with all benefits arising out of events up to that time taken in his favor, there would still be a tax due by him but for the fraud.... Any adjustment that may be permissible resulting from subsequent losses does not prevent the fraud committed in 1953 from being an attempt to 'evade or defeat any tax imposed by this chapter.'

289 F.2d at 288.

Appellant's distinction of *Willingham* is not persuasive. He argues that here the operating losses had accrued prior to the filing of the returns, and that he was entitled to show all deductions available at the time of actual filing, rather than at the time filing was required. Even if that were the case, it would save defendant only as to the second count. The 1972 return was filed on March 22, 1974, and the corporation's fiscal year did not end until August 31, 1974. A net operating loss sustained by a Subchapter S corporation does not become available to a shareholder until the corporation's taxable year which produces the loss has ended. 26 C.F.R. § 1.1374–1(b)(2) (1981). Whether there would, indeed, be any loss at all for the year could not be ascertained until the year had fully run. It was therefore impossible to know whether there would be a net operating loss until a date well after the 1972 return was filed.

Appellant seeks unavailing solace in 26 U.S.C. § 1374(c) which deals with allocation between a prior and a subsequent own-

er of a Subchapter S corporate loss. The loss for any year is prorated, based on the number of days during the year each owned the stock. However, that determination too can only be made after the full year is completed and the amount of the loss, if any, ascertained. While a seller may know immediately, if the sale takes place one month into the year, that the fraction of any loss which may eventually be attributable to him will be 31/365ths, nevertheless, he must wait until after the passage of the 365th day to know the amount to be multiplied against the fraction, and indeed to know whether there will be any loss whatever to which the fraction may be applied. *Cf.* 26 C.F.R. § 1.1374–1(b)(2) (1981), *supra* ("The deduction allowed shareholders by section 1374(b) is a deduction for the taxable year of the shareholder in which or with which the taxable year of the corporation ends. ...").

More to the point, the actual time of filing is irrelevant. In *Manning v. Seely Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), the IRS assessed a deficiency against defendant corporation for 1941. When the corporation filed its 1943 return, it had a net operating loss which, when carried back, wiped out the tax liability for 1941. The Supreme Court held that, notwithstanding the abatement of the 1941 deficiency, the interest assessed on the deficiency was unaffected. The Court stated:

> From the date the original return was *to be filed* until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax.

*Id.* at 565, 70 S.Ct. at 388. (emphasis added). Similarly, in the present case, as of the date when the 1972 and 1973 returns were "to be filed" (i.e. April 15, 1973 and April 15, 1974, respectively) appellant had an obligation to pay the tax due. The fact that subsequent operating losses would have permitted him to file an amended return and obtain a refund did not permit him to bypass the requirement of timely filing of a return indicating his income as of the date he was required to file. *See also Simon v. Commissioner*, 248 F.2d 869 (8th Cir. 1957) (1943 tax became due and payable on date 1943 return was required to be filed; subsequent operating loss subject to carryback did not relieve taxpayer from penalty for deficiency assessed based on 1943 return).

Appellant's interpretation of the net operating loss carryback provisions would create an enormous opportunity for abuse. Under his view, a taxpayer could simply falsify a return and refrain from claiming a net operating loss until the commencement of a tax evasion prosecution. If no prosecution occurred, the taxpayer would be free to carry the loss forward, getting a second benefit since by falsifying his return he would have eliminated the need to apply the loss to a prior year as it should have been. Moreover, a sufficiently wealthy taxpayer with no available net operating loss could fraudulently understate his tax liability, and only in the event of a tax evasion prosecution, purchase a corporation with accumulated losses, to apply to the wiping out of his prior tax liability, and therefore his criminal liability.

Appellant was, of course, entitled to argue that he truly believed, even if his belief was erroneous, that he owed no taxes, in order to prove his lack of intent to evade tax liability. The district court permitted him to testify extensively as to the losses, and instructed the jury to consider the testimony only on the issue of intent. In view of his failure to claim the losses on the 1972 and 1973 returns, or any amendments thereto, it is not surprising that the jury found the requisite intent to evade taxes. We find no error in the district court's treatment of the evidence of net operating losses.

## II.

Appellant next contends that the admission of the government's summary chart and of some of the explanatory testimony of the government's witness, David Bayha, were erroneous. The use of summary charts in tax evasion trials is within the trial court's discretion. *United States v.*

*Meriwether*, 486 F.2d 498 (5th Cir. 1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974). The charts are admissible only if they are "based upon and fairly represent competent evidence already before the jury." *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977), *cert. denied*, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977). *See also United States v. Moody*, 339 F.2d 161 (6th Cir. 1964). An appellate court will reverse a conviction due to erroneous admission of the charts only if the defendant shows that he was prejudiced. *United States v. Meriwether, supra. Cf. United States v. Conlin, supra* (erroneous admission of chart did not deprive defendant of fair trial).

 With the exception of certain typographical errors, all of the figures listed in the summary chart were based upon evidence before the jury. The typographical errors in the chart were clearly identified and corrected by Bayha at trial, so appellant was not prejudiced. There was no error in the admission of the summary chart.

 Appellant argues further that he was prejudiced by Bayha's testimony that the United Innkeepers corporate tax return was irregular. The argument has no merit. The district judge sustained an objection to the testimony on the ground that it was appropriate for rebuttal, but not for the case in chief. The testimony was clearly relevant and material, since defendant's claim that he had no tax liability rested on the premise that the United Innkeepers returns were accurate. Bayha, as an expert witness, was competent to testify on the matter. It was within the judge's discretion to defer consideration of the matter until defendant had raised the defense, but there was no error in permitting Bayha to testify on the matter.

Accordingly, we affirm.

AFFIRMED.