111 T.C. No. 2


UNITED STATES TAX COURT


ESTATE OF EMANUEL TROMPETER, DECEASED,
ROBIN CAROL TROMPETER GONZALEZ AND JANET ILENE TROMPETER
POLACHEK, CO-EXECUTORS, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent*


Docket No. 11170-95.                    Filed July 22, 1998.


    E, an estate, is subject to the fraud penalty of
sec. 6663(a), I.R.C.  R computes this penalty based on
E's underpayment as determined by taking into account
only the deductions which were included on E's Federal
estate tax return.  E computes its underpayment by also
taking into account deductions for expenses, such as
professional fees and deficiency interest, which arose
after the filing of E's return.
    Held:  E's underpayment is determined by taking
into account all deductible expenses, including those
paid or incurred after the filing of the return.


    Robert A. Levinson and Avram Salkin, for petitioner.


    * This opinion supplements our Memorandum Opinion in
Estate of Trompeter v. Commissioner, T.C. Memo. 1998-35.

Irene Scott Carroll, for respondent.


SUPPLEMENTAL OPINION

LARO, Judge:  The dispute herein involves the Rule 155 computation mandated by the Court's Memorandum Opinion filed as Estate of Trompeter v. Commissioner, T.C. Memo. 1998-35.  The issue before the Court is one of first impression; namely, whether an estate's underpayment for purposes of computing the fraud penalty is determined based solely on expenses which are included on the Federal estate tax return, or based on all deductible expenses including deficiency interest and professional fees which arise after the filing of the return.

We hold that the underpayment is determined by taking into account all expenses.  Unless otherwise stated, section references are to the applicable provisions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.  Estate references are to the Estate of Emanuel Trompeter.  Mr. Trompeter (the decedent) resided in Thousand Oaks, California, when he died on March 18, 1992.  The estate's coexecutors, Robin Carol Trompeter Gonzalez and Janet Ilene Trompeter Polachek, resided in Florida and California, respectively, when the petition was filed.

In Estate of Trompeter v. Commissioner, supra, we held that the estate was subject to the fraud penalty under section 6663(a).  The estate computes the amount of this penalty based on

an underpayment that takes into account all deductible expenses, including expenses for trustee's fees, attorney's fees, and deficiency interest that were incurred after the filing of the estate tax return.  Respondent challenges the estate's ability to compute its underpayment by deducting the latter expenses. Respondent asserts that the estate must compute its underpayment based solely on the expenses which were reported on its estate tax return.

We agree with petitioner.  Section 6663(a) imposes a 75-percent penalty on the portion of "any underpayment of tax required to be shown on a return [that] is due to fraud".[1]  The term "underpayment" is defined by section 6664(a) to mean

> the amount by which any tax imposed by this title exceeds the excess of--
>
> (1) the sum of--
>
> (A) the amount shown as the tax by the taxpayer on his return, plus
>
> (B) amounts not so shown previously assessed (or collected without assessment), over
>
> (2) the amount of rebates made.

---

[1] Sec. 6663(a) provides:

SEC. 6663(a). Imposition of Penalty.--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75-percent on the portion of the underpayment which is attributable to fraud.

In the case of the Federal estate tax, the "amount of tax imposed by this title" refers to the tax that "is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States."  Sec. 2001(a).  This tax is determined based on the value of the taxable estate, sec. 2001, which, in turn, is determined by reducing the value of the gross estate by the amount of any deduction set forth in sections 2053 through 2056.  Sec. 2051.  Section 2053 allows a deduction for certain expenses, indebtedness, and taxes.  Section 2054 allows a deduction for certain losses.  Section 2055 allows a deduction for certain transfers for public, charitable, or religious uses.  Section 2056 allows a deduction for certain bequests to a surviving spouse.

Nowhere in the Code or regulations thereunder does it say that an estate's underpayment is based solely on deductions that appear on its estate tax return.  Respondent reaches this result by analogy to a line of cases which hold that a net operating loss (NOL) carryback will not reduce the amount of an income tax underpayment for purposes of computing a penalty or an addition to tax.  In this Court's seminal opinion of C.V.L. Corp. v. Commissioner, 17 T.C. 812 (1951), we held that a delinquency penalty applied to a year for which it was later determined that no tax was due on account of an NOL carryback.  In reaching this result, we relied on Manning v. Seeley Tube & Box Co., 338 U.S. 561 (1950), and the Senate Finance Committee report accompanying

the Revenue Act of 1942, ch. 619, 56 Stat. 798.  The Supreme

Court held in Manning v. Seeley Tube & Box Co., supra, that an

NOL carryback eliminated a deficiency for a prior year, but did

not eliminate the interest that accrued thereon.  The Senate

Finance Committee report stated that

> A taxpayer entitled to a carry-back of a net
> operating loss * * * will not be able to determine the
> deduction on account of such carry-back until the close
> of the future taxable year in which he sustains the net
> operating loss * * *.  He must therefore file his
> return and pay his tax without regard to such
> deduction, and must file a claim for refund at the
> close of the succeeding taxable year when he is able to
> determine the amount of such carry-back.  * * *
> [S. Rept. 1631, 77th Cong., 2d Sess., at 123 (1942),
> 1942-2 C.B. 504, 597.]

This Court subsequently extended the principle enunciated in

C.V.L. Corp. v. Commissioner, supra, to an NOL that was carried

back to a year in which the taxpayer was subject to an addition

to tax for fraud.  The Court held in Petterson v. Commissioner,

19 T.C. 486 (1952), that the original deficiency was the proper

base for computing the fraud penalty, and that the NOL carryback

did not reduce this deficiency for purposes of that computation.

This and every other Court that has considered whether an

NOL carryback reduces an underpayment for purposes of computing

a penalty or an addition to tax has concluded that the principle

expressed in C.V.L. Corp. v. Commissioner, supra, is correct;

namely, that the NOL carryback may not reduce the underpayment.

See, e.g., Arc Elec. Constr. Co. v. Commissioner, 923 F.2d 1005,

1009 (2d Cir. 1991), affg. on this issue and revg. and remanding

T.C. Memo. 1990-30; Willingham v. United States, 289 F.2d 283, 287-288 (5th Cir. 1961); Simon v. Commissioner, 248 F.2d 869, 877 (8th Cir. 1957), affg. on this issue and revg. and remanding U.S. Packing Co. v. Commissioner, T.C. Memo. 1955-194; Nick v. Dunlap, 185 F.2d 674 (5th Cir. 1950); Rictor v. Commissioner, 26 T.C. 913, 914-915 (1956); Auerbach Shoe Co. v. Commissioner, 21 T.C. 191, 196 (1953), affd. 216 F.2d 693 (1st Cir. 1954); Blanton Coal Co. v. Commissioner, T.C. Memo. 1984-397; Pusser v. Commissioner, a Memorandum Opinion of this Court dated Dec. 7, 1951, affd. per curiam 206 F.2d 68 (4th Cir. 1953); see also United States v. Keltner, 675 F.2d 602, 605 (4th Cir. 1982). Respondent's reliance on this line of cases for a similar result here, however, is misplaced. The ability to carry back an NOL depends on the happenings in a taxable year after the taxable year in which the underpayment is due to fraud, and the subsequent year may be as far away as 3 years after the year of the fraudulent underpayment. The principle of C.V.L. Corp. v. Commissioner, supra, reflects the fact that each taxable year is a separate year for income tax purposes, and that a taxpayer may not reduce his or her liability for fraudulent conduct in one year by virtue of unforeseen or fortuitous circumstances that happen to occur in a later year. See Paccon, Inc. v. Commissioner, 45 T.C. 392 (1966).

In the case of the Federal estate tax, however, the same rationale does not apply. The Federal estate tax is not

calculated on an annual basis, but is a one-time charge or excise that is computed on the value of a decedent's gross estate less certain deductions which are specifically allowed by the Code. Some of these deductions, like the ones at hand, cannot be determined until after a return is filed. Unlike an NOL carryback, these deductions do not depend on unrelated, unforeseen, or fortuitous circumstances that may occur in later years. These deductions are directly related to a determination of an estate's tax liability. In contrast to the determination of Federal income tax liability, a determination of Federal estate tax liability is not made based solely on deductions that are required to be reported on the appropriate tax return as filed. Indeed, our rules explicitly recognize the fact that even some expenses incurred at or after a trial are deductible in determining an estate's Federal estate tax liability. See Rule 156; see also Estate of Bailly v. Commissioner, 81 T.C. 246, supplemented by 81 T.C. 949 (1983).

We also disagree with respondent's argument in this case because it could possibly lead to the imposition of the fraud penalty when the taxpayer/estate does not have an underpayment of tax and, indeed, may even be entitled to an overpayment. Such a result is inconsistent with jurisprudence. As this Court has consistently held, the fraud penalty does not apply without an underpayment because "[absent] an underpayment, there is nothing upon which the fraud addition to tax [or penalty, as it is now

known] would attach."  See, e.g., <u>Newman v. Commissioner</u>, T.C. Memo. 1992-652; <u>Lerch v. Commissioner</u>, T.C. Memo. 1987-295, affd. 877 F.2d 624 (7th Cir. 1989); <u>Hamilton v. Commissioner</u>, T.C. Memo. 1987-278, affd. without published opinion 872 F.2d 1025 (6th Cir. 1989); <u>Shih-Hsieh v. Commissioner</u>, T.C. Memo. 1986-525, affd. without published opinion 838 F.2d 1203 (2d Cir 1987); <u>Estate of Cardulla v. Commissioner</u>, T.C. Memo. 1986-307; <u>Apothaker v. Commissioner</u>, T.C. Memo. 1985-445; <u>Boggs v. Commissioner</u>, T.C. Memo. 1985-429; <u>Meredith v. Commissioner</u>, T.C. Memo. 1985-170; <u>Stephens v. Commissioner</u>, T.C. Memo. 1984-449; <u>Phillips v. Commissioner</u>, T.C. Memo. 1984-133; see also <u>Compton v. Commissioner</u>, T.C. Memo. 1983-642; <u>Hansen v. Commissioner</u>, T.C. Memo. 1981-98; <u>Nunez v. Commissioner</u>, T.C. Memo. 1969-216; <u>Brown v. Commissioner</u>, T.C. Memo. 1968-29, affd. per curiam 418 F.2d 574 (9th Cir. 1969).  Moreover, as the Court of Appeals for the Fifth Circuit has stated in a similar setting:

> The taxpayer sought to introduce evidence to show the market value of the option at the time it was given. This evidence was excluded in the court below.  In addition, the taxpayer attempted to show additional costs incurred for the timber and not claimed on the 1949 return.  Likewise, the court below excluded this evidence.  Also, with respect to the unreported sales, the taxpayer proffered evidence as to alleged additional costs incident to the sales not reported on the 1949 return.  Again, the court below excluded the evidence as being irrelevant.  This was error.  Indeed, the appellee, United States, confesses error as to the exclusion of this evidence and concedes that the case should be remanded for a new trial.  This undoubtedly is the correct view, for these alleged additional costs and the reasonable market value of the option, if proven, are relevant to the existence of a tax deficiency.  Internal Revenue Code of 1939, §293(b).

> Since fraud on the part of the taxpayer as to the alleged deficiencies is the issue in this case, it is correct to state that if there is no deficiency, there can be no fraud in connection with the alleged deficiency.  This evidence should have been received. [Jenkins v. United States, 313 F.2d 624, 627 (5th Cir. 1963).]

We have also considered whether an estate may deduct the items reported on its estate tax return, in order to determine its underpayment for purposes of applying section 6663(a), as well as any unreported item that is properly deductible as of the date that the estate tax return is filed.  Such a result would be reached by interpreting the phrase "tax required to be shown on a return", as it appears in section 6663(a), to mean that an estate must determine the related underpayment for that section by taking into account only those items that could have been properly deducted from the gross estate on the date that the return was filed.  We reject this interpretation.  Congress did not intend for that phrase to be understood in a temporal sense, but intended that the phrase serve as a rule of classification.  In other words, the phrase "tax required to be shown on a return" merely refers to the type of tax that is subject to section 6663(a); namely, a tax payable with a return as opposed to, for example, a tax payable by stamp.  In addition to our literal reading of section 6663(a), in the view of the text of section 6663 as a whole, we find Congress' intent for the relevant phrase by examining the evolution of section 6663(a).  Section 6663(a) was added to the Code by section 7721(a) of the Omnibus Budget

Reconciliation Act of 1989 (the 1989 Act), Pub. L. 101-239,
103 Stat. 2106, 2395-2398.  Prior to the passage of the 1989 Act,
the fraud penalty (or addition to tax, as it was then known) was
contained in former section 6653(b) and (e).  This former section
provided:

> SEC. 6653(b).  Fraud.--
>
>> (1) In general.--If any part of any
>> underpayment * * * of tax required to be
>> shown on a return is due to fraud, there
>> shall be added to the tax an amount equal to
>> 75 percent of the portion of the underpayment
>> which is attributable to fraud.
>
>> *     *     *     *     *     *     *
>
> (e) Failure To Pay Stamp Tax.--Any person * * * who
> willfully fails to pay any tax imposed by this title
> which is payable by stamp, coupons, tickets, books, or
> other devices or methods prescribed by this title or by
> regulations under authority of this title, or willfully
> attempts in any manner to evade or defeat any such tax
> or the payment thereof, shall, in addition to other
> penalties provided by law, be liable to a penalty of 50
> percent of the total amount of the underpayment of the
> tax.

Section 7721(a) of the 1989 Act amended former section 6653 to
read almost verbatim with former section 6653(e); i.e., section
6653 now applies only to a failure to pay tax by way of stamps,
coupons, tickets, books, or other devices or methods prescribed
by the Code or regulations thereunder.  Section 7721(a) of the
1989 Act also created section 6663(a) to impose the fraud penalty
on "tax required to be shown on a return".  Congress did not
intend for the 1989 Act, as it applied to the fraud and
accuracy-related penalties, to create a new body of law that

applied thereto.  The reason for the change, as stated by the House Committee on the Budget, was:

> The committee believes that the number of different penalties that relate to accuracy of a tax return, as well as the potential for overlapping among many of these penalties, causes confusion among taxpayers and leads to difficulties in administering these penalties by the IRS.  Consequently, the committee has revised these penalties and consolidated them.  The committee believes that its changes will significantly improve the fairness, comprehensibility, and administrability of these penalties.  [H. Rept. 101-247, at 2221 (1989).]

Our interpretation of the relevant phrase is also supported by Congress' recognition of the fact that some taxes are payable by return and that other taxes are payable by stamp.  Section 6511(a), for example, provides different limitations for credit or refund, depending on whether it is "in respect of which tax the taxpayer is required to file a return * * * [or] which is required to be paid by means of a stamp".  Likewise, section 6601(a) imposes interest on "any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) [that] is not paid on or before the last day prescribed for payment".  Similarly, section 6501(a) generally provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * * or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid".

Respondent relies on the principles of cases such as Badaracco v. Commissioner, 464 U.S. 386, 401 (1984), and Helvering v. Mitchell, 303 U.S. 391, 401 (1938), to the effect that fraud is established upon the filing of a fraudulent return and that the fraud penalty reimburses the Government for detecting, investigating, and prosecuting fraud. Although we have no qualms about respondent's recitation of this well-settled law, whether the estate is liable for fraud is not at issue here. We decided that issue in Estate of Trompeter v. Commissioner, T.C. Memo. 1998-35, where we found that the estate had committed fraud when it filed its estate tax return. We disagree with any implication, however, that this body of law supports an interpretation of the phrase "tax required to be shown on a return" contrary to that which we espouse. The relevant phrase does not apply just to cases of fraud. The same phrase appears in section 6662(a), which, among other things, imposes a 20-percent accuracy-related penalty on underpayments attributable to negligence and substantial understatement.

We hold that an estate's underpayment is determined by taking into account all amounts which it is allowed to deduct in computing its Federal estate tax liability. Respondent is concerned that our holding will lead to bad tax policy in that the "government's reimbursement [through the fraud penalty] could be consumed by the * * * [estate's] counsels' fees and fees being paid to the trustees, who happen to be the beneficiaries of the

estate".  We are not as concerned.  Although it is true that fees for professionals such as attorneys and trustees may be considerable expenses in the administration of an estate, only those fees that are legitimate and reasonable are deductible. We also note that respondent's policy argument is better aimed at Congress.

We have considered all arguments by respondent for a holding contrary to that which we reach herein, and, to the extent not discussed above, have found those arguments to be irrelevant or without merit.  To reflect the foregoing

<u>An appropriate order will be issued</u>.

Reviewed by the Court.

CHABOT, SWIFT, JACOBS, PARR, WELLS, COLVIN, FOLEY, VASQUEZ, GALE, THORNTON, and MARVEL, <u>JJ</u>., agree with this majority opinion.

CHABOT, J., concurring:  I join in the majority opinion, and write separately merely to note a few additional considerations in support of the majority opinion's analysis and conclusions.

### I.  Treasury Regulations

Respondent argues that only those expenses which are reported on the estate tax return may be deducted from the gross estate in computing the amount of the underpayment. Correspondingly, respondent further argues that expenses which arise after the filing of the tax return may not be used to reduce the underpayment of the estate tax.

However, section 2053(a), in determining the value of the taxable estate, permits the deduction of claims against the estate which are allowable by applicable State laws.  There are some types of claims whose effect on the decedent's estate must necessarily be determined by subsequent events, such as those claims which require further action before they become a fixed obligation of the estate.  See cases discussed in Estate of Smith v. Commissioner, 108 T.C. 412, 418-419 (1997), supplemented by 110 T.C. 12 (1998); Estate of Kyle v. Commissioner, 94 T.C. 829, 848-851 (1990); Estate of Sachs v. Commissioner, 88 T.C. 769, 779-783 (1987), affd. in part and revd. in part 856 F.2d 1158, 1162-1163 (8th Cir. 1988); Estate of Van Horne v. Commissioner, 78 T.C. 728, 735-738 (1982), affd. 720 F.2d 1114 (9th Cir. 1983).

Section 20.2053-1(b)(3), Estate Tax Regs.,[1] forbids the deduction

on the estate tax return of an item unless the amount of the

liability "is ascertainable with reasonable certainty, and will

be paid."  The provision closes with the reassurance that, if the

matter is not resolved by the time of the final audit, then

relief would be available in the Tax Court or in a refund suit.

Respondent's contentions in the instant case fly in the face

of this reassurance.  Having forbidden by regulation the taking

of a deduction, even by way of estimate, on a timely filed estate

tax return, respondent in the instant case proposes to limit the

relief otherwise flowing from the deduction merely because the

---

[1]     SEC. 20.2053-1(b)(3), Estate Tax Regs., provides as
follows:

SEC. 20.2053-1.  Deductions for expenses, indebtedness, and
    taxes; in general.  * * *


*     *     *     *     *     *     *

(b) Provisions applicable to both categories.

*     *     *     *     *     *     *

(3) Estimated amounts.  An item may be entered on
the return for deduction though its exact amount is not
then known, provided it is ascertainable with
reasonable certainty, and will be paid.  No deduction
may be taken upon the basis of a vague or uncertain
estimate.  If the amount of a liability was not
ascertainable at the time of final audit of the return
by the district director and, as a consequence, it was
not allowed as a deduction in the audit, and
subsequently the amount of the liability is
ascertained, relief may be sought by a petition to the
Tax Court or a claim for refund as provided by sections
6213(a) and 6511, respectively.

taxpayer obeyed the regulation, waited until the event occurred, and sought the promised relief at an appropriate time in the instant Tax Court proceeding.

In United States v. Olympic Radio & Television, 349 U.S. 232, 236 (1955), the Supreme Court directed that "We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit." Thus, if the phrase "tax required to be shown on a return" were to be interpreted in a temporal sense in section 6663(a), then it ought to have the same meaning wherever it appears. This means that it would have the same meaning where it appears in section 6662(a), and would have the same impact on those of the section 6662 additions that apply to the estate tax.

Respondent's contentions in the instant case might well lead prudent executors to load up estate tax returns with speculative deductions in order to satisfy this newly proclaimed requirement, that only items claimed on the estate tax return may be taken into account in determining the base for additions to tax under sections 6662 and 6663.

Thus, respondent's contentions in the instant case appear to conflict with Treasury regulations and may well complicate the practical administration of the estate tax laws.

## II. Legislative History

The majority opinion explains that the phrase "tax required to be shown on a return" has a clear classification meaning in

the places in the Code where the phrase appears, but a temporal meaning which would support respondent's position would not fit in many such places.  An examination of the legislative history of the enactment of the Internal Revenue Code of 1954, where this phrase appears to have been introduced into the fraud provision, lends further support to the majority opinion's analysis and conclusions.

Under the Internal Revenue Code of 1939, the civil fraud addition to tax for income tax was imposed by section 293(b), with a special rule in section 51(g)(6)(B) in certain joint tax return situations; for gift tax by section 1019(b); and generally for other taxes where tax returns or lists were filed by section 3612(d)(2).  As to the applicability of section 3612(d)(2) to estate taxes, see sec. 871(i).  The civil fraud addition to tax for various stamp taxes was imposed by section 1821(a)(3).

When the Internal Revenue Code of 1954 was enacted, the foregoing 1939 Code provisions were replaced by the following:

SEC. 6653.  FAILURE TO PAY TAX.

*     *     *     *     *     *     *

(b) Fraud.--If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.  In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).

*     *     *     *     *     *     *

(e) Failure To Pay Stamp Tax.--Any person (as defined in section 6671(b)) who willfully fails to pay

any tax imposed by this title which is payable by stamp, coupons, tickets, books, or other devices or methods prescribed by this title or by regulations under authority of this title, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty of 50 percent of the total amount of the underpayment of the tax.

The text of these provisions as enacted is identical to the text of these provisions as reported by the Senate Finance Committee.

The Senate Finance Committee's technical explanation of these fraud provisions, S. Rept. 83-1622, at 591-592 (1954), is as follows:

Section 6653.  Failure to pay tax

For all taxes for which returns are required, this section prescribes additions to the tax, corresponding to those of existing law relating to the income tax, for underpayments of tax resulting from fraud (50 percent of the underpayment).  Existing law imposes a 50 percent addition in the case of fraud applicable to all taxes, but, in the case of taxes other than income, estate, and gift, that addition is based on the total amount of tax imposed.  This section further provides that if the 50 percent penalty resulting from the fraud is assessed, the addition to tax under section 6651 for failure to file a return will not be assessed with respect to the same underpayment.  Another change provided in this section is the substitution, for the penalty provided in existing law of an amount equal to the amount of any stamp tax evaded or not paid, of an addition to the tax of 50 percent of the total amount of the underpayment of such tax.

To the same effect is the House Ways and Means Committee's report.  H. Rept. 83-1337, at A419 (1954).

Thus, it is clear that in 1954 the Congress intended to consolidate and revise many of the 1939 Code fraud provisions.

The phrase "tax required to be shown on a return" is described in the committee report as "all taxes for which returns are required".  S. Rept. 83-1622 at 591.  That phrase is used to set off the section 6653(b), I.R.C. 1954 rules from the rules applying to "any tax imposed by this title which is payable by stamp, coupons, tickets, books, or other devices", which are collectively referred to in the committee report as "any stamp tax" S. Rept. 83-1622, at 591, and which appear in the statute at section 6653(e), I.R.C. 1954.

The classification interpretation is clear from the legislative events of 1954 and the committee reports.  One searches in vain for any legislative events of 1954 or explanations in the course of the enactment of the 1954 Code that suggests that the phrase in dispute should be given a temporal interpretation, whether as to fraud or in general.

SWIFT, PARR, WHALEN, LARO, VASQUEZ, GALE, and MARVEL, JJ., agree with this concurring opinion.

SWIFT, J., concurring:  Judge Ruwe's dissent acknowledges that under section 2053(a) an estate, or a preparer of an estate tax return, may estimate and claim on the estate tax return, expenses not yet incurred if such expenses are reasonably anticipated and an amount therefor can be reasonably estimated. See sec. 20.2053-1(b)(3), Estate Tax Regs.

In Estate of Trompeter v. Commissioner, T.C. Memo. 1998-35, we found that the executor in this case "knowingly" filed a fraudulent estate tax return.  Because the fraud was "known" at the time the estate tax return was filed, it would appear that it would not have been unreasonable (albeit perhaps a poor strategy) for the tax return preparer to have anticipated respondent's audit and the litigation that followed and, under section 2053, to have estimated on the estate tax return a reasonable amount for legal fees likely to be incurred in connection with the litigation and to have claimed such expenses as deductions.

I note that under current law and ethical guidelines, tax return preparers may no longer consider the audit lottery when evaluating the "reasonableness" of tax return positions.  See Treas. Dept. Circular No. 230 (Regulations Governing the Practice * * * Before the Internal Revenue Service); AICPA Statements on Responsibilities in Tax Practice No. 1, par. 03a and Interpretation No. 1-1, par. 05; ABA Ethics Opinion 85-352.

Circular No. 230 at section 10.34(a)(4)(i) provides as follows:

> The possibility that a position will not be
> challenged by the Service (e.g., because the
> taxpayer's return may not be audited or
> because the issue may not be raised on audit)
> may not be taken into account.

In other words, in considering the "hazards of litigation" or the reasonableness of a particular tax return position, tax return preparers are now to assume that tax returns will be audited by respondent and that questionable items reported and claimed on the returns will be disallowed by respondent.

Accordingly, with regard to questionable items knowingly reported on estate tax returns, taxpayers and tax return preparers generally are to anticipate that an audit will occur and that questionable items will be disallowed by respondent, and they are to anticipate that the estate will incur additional legal expenses associated with that disallowance. Thus, under section 20.2053-1(b)(3), Estate Tax Regs., it appears that legal expenses likely to be associated with a disallowance by respondent of questionable items reflected on estate tax returns could be claimed on the returns when filed, based on reasonable estimates therefor.

I have two further points.

If a taxpayer and a tax return preparer jointly and knowingly participate in the preparation and filing of a grossly fraudulent tax return to such an extent that the fraud -- when first raised by respondent on audit -- should have been

immediately conceded by the taxpayer and by the taxpayer's legal representative, then the taxpayer should not have contested either the resulting tax deficiency or the imposition of the fraud penalty. A contest involving such a patently fraudulent return would be frivolous.

Under the above approach, postaudit administrative hearings and Tax Court litigation contesting an estate tax deficiency and imposition of a fraud penalty ought to be regarded as unnecessary and frivolous, and legal expenses relating thereto should be disallowed under section 2053 and section 20.2053-3(a), Estate Tax Regs., as unreasonable and as incurred not for the benefit of the estate, but for the benefit of the beneficiaries (i.e., as merely an attempt by the beneficiaries to postpone payment of the proper estate tax and penalties due). See, for example, Hibernia Bank, Admr. (Estate of Clark) v. United States, 581 F.2d 741, 746 (9th Cir. 1978); Estate of Dutcher v. Commissioner, 34 T.C. 918, 923 (1960); Estate of Bartberger v. Commissioner, T.C. Memo. 1988-21; and Estate of Pudim v. Commissioner, T.C. Memo. 1982-606, affd. without published opinion 942 F.2d 1433 (2d Cir. 1983), each of which illustrates the disallowance, for estate tax purposes, of legal and other fees and costs due to the fact that the costs were not incurred in the good faith administration of the estate but for the benefit of the beneficiaries.

I would think that the above authority would provide the mechanism to handle the dissent's hypothetical situation that reflects bad faith and frivolous litigation.

Lastly, if, on policy grounds,[1] expenses of the type in dispute herein should be denied as a matter of law, it would appear appropriate for Congress to do so by legislation, rather than by opinion of this Court and by respondent's strained interpretation of the statutory provisions, under which the expenses in dispute would be deductible under section 2053 for civil tax deficiency purposes but, as a matter of law, would not be deductible for purposes of the computation of the fraud addition to tax. If Congress intends significant disparate treatment in the allowance of identical expenses for two closely related purposes, I would expect such disparate treatment to be clearly set forth in the statutory scheme.

---

[1]A strong policy argument certainly can be made that because the items in question in this case were fraudulent they never should have been claimed on the estate tax return in the first place and the subsequent and related litigation expenses then never would have been incurred.

HALPERN, J., concurring: The majority's interpretation of section 6663(a) leads to the conclusion that an executor who, in anticipation of incurring future administration expenses, deducts those expenses on the estate tax return, knowing full well that such expenses are not deductible until incurred, will avoid any section 6663(a) penalty with respect to his action even if the Court finds that he acted with fraudulent intent, so long as the expenses eventually are incurred. Cf. Summerill Tubing Co. v. Commissioner, 36 B.T.A. 347 (1937) (fraud in corporate return on account of fictitious purchases, which masked embezzlement; statutory period of limitations extended on account of fraud; no deficiency on which to base addition to tax for fraud because of offsetting theft-loss deduction). As a matter of policy, I question such result. Nonetheless, I think that it is compelled because of the structure and historical development of the section 6663(a) fraud penalty.

As a matter of arithmetic, section 6663(a) contains an equation, in which the amount of the fraud penalty equals the product of a multiplier ("75 percent") and a multiplicand ("the portion of the underpayment which is attributable to fraud"). Section 6663(a) is ambiguous, however, as illustrated by the debate between the majority and Judge Ruwe. The issue is whether we are to determine one aspect of the multiplicand (the underpayment) as of the time the return is filed or as ultimately determined. Since the term "underpayment" is defined in section

6664(a) without any temporal qualification, the focus is on the phrase "of tax required to be shown on a return", which modifies the term "underpayment" in section 6663(a).[1]  I am persuaded that the majority has reached the right result on the basis of both the history of section 6663 and a textual analysis.

The relevant history concerns the evolution of the 1939 Code into the 1954 Code.  An adequate summary of that history is provided in Judge Chabot's concurring op. pp. 16-19.  The important point is that, in 1954, Congress' purpose was to consolidate and revise many of the 1939 Code fraud provisions.  Under the 1939 Code, as described in the report of the Committee on Finance, see Judge Chabot's concurring op. p. 18, there were two models for imposition of a fraud addition.  For all taxes, there was a 50-percent addition in the case of fraud.  The base

---

[1]      In pertinent part, the term "underpayment", as defined in sec. 6664(a), is the difference between "the tax imposed by this title" and "the amount shown as the tax by the taxpayer on his return".  Notwithstanding that the majority says that the issue before the Court is whether the underpayment "is determined based solely on expenses which are included on the Federal estate tax return, or based on all deductible expenses including deficiency interest and professional fees which arise after the filing of the return", majority op. p. 2, the issue is plainly whether  sec. 6663(a) specifies a time (the time for filing the return) for determining the minuend (i.e., the "the tax imposed by this title") in the sec. 6664(a) equation.  With respect to the question of statutory interpretation facing us, the subtrahend (i.e., "the amount shown as the tax by the taxpayer on his return") is invariable.  Thus, a taxpayer can reduce the sec. 6663(a) fraud penalty by proving deductions available at the time the return was filed but omitted therefrom.  Cf. Summerill Tubing Co. v. Commissioner, 36 B.T.A. 347 (1937) (discussed in the text).  The majority's mischaracterization is of no consequence in calculating the relevant difference.

(the multiplicand), however, differed as between the income, estate, and gift taxes, on the one hand, and all other taxes on the other hand. The multiplicand for the former group was the amount of the deficiency in tax. See, e.g., 1939 Code sec. 293(b). For all other taxes, the multiplicand was the amount of tax due. See sec. 3612(d)(2), I.R.C. 1939. For the 1954 Code, as stated in the report of the Senate Finance Committee, Congress chose the income tax model for all taxes for which returns are due. The 1939 provision, section 293(b), provided as follows:

> Fraud.--If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).

The term "deficiency" was defined in section 271 of the 1939 Code much as it is defined both in the 1954 Code and today, and much as the term "underpayment" is defined in section 6664(a). I do not read any temporal qualification into the multiplicand in the 1939 Code income tax fraud equation, and, for that reason, I do not think that Congress intended one to exist today. Such a qualification would have been a significant change, and I think that the lack of any mention of such a change in the legislative history is persuasive that one was not intended.

With respect to the text of section 6663, the object of the adjectival prepositional phrase "of tax required to be shown on a return" is the immediately preceding noun "underpayment". The phrase does not modify the second use of the noun "underpayment"

in subsection (a), which second use is in the actual penalty equation, nor does it modify any use of the noun "underpayment" in subsections (b) and (c). If Congress had intended the phrase to be a temporal qualification on the term "underpayment" for purposes of the penalty equation, then it is unlikely that Congress would have merely implied such qualification in the equation.

Also, Congress used the indefinite article "a", supporting the majority's interpretation that the phrase "required to be shown on a return" is a general qualification, rather than the definite article "the", which would support Judge Ruwe's interpretation that the phrase is a temporal requirement regarding the return.

SWIFT, WHALEN, BEGHE, and GALE, <u>JJ</u>., agree with this concurring opinion.

RUWE, J., dissenting:  The majority holds that in determining the "underpayment" on which the section 6663(a) fraud penalty is imposed, petitioner is allowed to deduct expenses that were incurred long after the fraudulent estate tax return was filed.  Although there is no dispute that reasonable postreturn expenses are allowable for purposes of determining the ultimate estate tax, section 6663(a) specifically provides that the fraud penalty be imposed on "any part of any underpayment of tax required to be shown on a return".  (Emphasis added.)  The majority interprets the highlighted portion of the statutory phrase as merely a classification of the type of tax to which section 6663(a) applies.  I believe that a more reasonable interpretation is that section 6663(a) imposes the penalty on the amount of the fraudulent underpayment of tax that was required to be shown on a return at the time the fraudulent return was filed.

An estate tax return must be filed, and the tax must be paid, within 9 months after the decedent's death.[1]  Secs. 6075(a), 6151.  A deduction from the gross estate is allowed for administration expenses.  Sec. 2053(a).  For expenses that are not paid prior to filing the estate tax return, an estimated amount may be deducted if it is known that such expenses will be

_____

[1]An extension up to 6 months may be obtained for filing. Sec. 6081(a); sec. 20.6081-1(a), Estate Tax Regs.; see Estate of La Meres v. Commissioner, 98 T.C. 294, 320-321 (1992).  The time for payment of the estate tax may be extended for a period of 1 year past the due date.  Sec. 6161(a)(1).  For reasonable cause, the time for payment may be extended for up to 10 years.  Sec. 6161(a)(2).

paid and if they are ascertainable with reasonable certainty.

Thus, section 20.2053-1(b)(3), Estate Tax Regs., provides:

> An item may be entered on the return for deduction though its exact amount is not then known, <u>provided it is ascertainable with reasonable certainty, and will be paid</u>. <u>No deduction may be taken upon the basis of a vague or uncertain estimate</u>. If the amount of a liability was not ascertainable at the time of final audit of the return by the district director and, as a consequence, it was not allowed as a deduction in the audit, and subsequently the amount of the liability is ascertained, relief may be sought by a petition to the Tax Court or a claim for refund as provided by sections 6213(a) and 6511, respectively. [Emphasis added.]

While postreturn expenses can reduce the taxable estate, if they are not ascertainable at the time the return is filed, such expenses cannot be deducted on the estate tax return. See <u>Estate of Bailly v. Commissioner</u>, 81 T.C. 246, supplemented by 81 T.C. 949 (1983).

The amount of tax required to be shown on a return can only be computed based on the facts and circumstances in existence when the return is filed. Expenses for petitioner's subsequent contest of the deficiency and fraud penalty had not been incurred and could not have been ascertained at the time the return was filed. Likewise, interest on the fraudulent underpayment had not yet been incurred nor was it ascertainable. Petitioner's postreturn expenses could not have been deducted on its estate tax return, and hence, these expenses do not reduce the tax liability that was required to be shown on the return. The ability to adjust a tax liability after the return is due does not relieve a taxpayer of the obligation to report the tax in

full when it is due, nor does it defer a taxpayer's duty to pay the tax promptly.  <u>Manning v. Seeley Tube & Box Co.</u>, 338 U.S. 561 (1950).[2]

Any distinction between the calculation of an estate tax liability and the calculation of an income tax liability has no bearing on the taxpayer's statutory obligation to file an accurate and timely return.  The reasoning in the line of cases holding that a net operating loss (NOL) carryback will not reduce the amount of an income tax underpayment for purposes of computing a penalty or an addition to tax was not based on the unique nature of the income tax.

The rationale in <u>C.V.L. Corp. v. Commissioner</u>, 17 T.C. 812 (1951), is not based on the fact that each taxable year is a separate year for income tax purposes as the majority claims. Majority op. p. 6.  In that case we upheld a delinquency penalty even though the deficiency had been eliminated by an NOL carryback because the obligation to file a timely return was

---

[2]In <u>Manning v. Seeley Tube & Box Co.</u>, 338 U.S. 561, 565 (1950), the Court stated:

> The problem with which we are concerned in this case is whether the interest on a validly assessed deficiency is abated when the deficiency itself is abated by the carryback of a net operating loss.
>
> * * * The <u>subsequent</u> cancellation of the duty to pay this assessed deficiency does not cancel in like manner the duty to pay the interest on that deficiency. From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States:  a duty to pay its tax. * * * [Emphasis added.]

mandatory and subsequent events could not excuse that obligation.
Id. at 861.  In Auerbach Shoe Co. v. Commissioner, 21 T.C. 191,
196 (1953), affd. 216 F.2d 693 (1st Cir. 1954), we held that

> The taxpayer is required to report the correct
> amount of his income in filing a return.  Where this is
> not done due to the taxpayer's fraudulent conduct,
> liability for the 50 per cent addition to the tax for
> fraud is incurred and the unforeseen circumstance that
> a carry-back later arises to offset the deficiency
> should not operate to relieve the taxpayer of the
> addition imposed for the fraud. * * * The liability for
> the additions to the tax for fraud existed from the
> time of the filing of the false and fraudulent return
> with intent to evade tax.  The addition is to be
> measured by the deficiency, undiminished by any
> subsequent credit or carry-back. [Emphasis added.]

The key fact relied upon in both C.V.L. Corp. v. Commissioner,
supra, and Auerbach Shoe Co. v. Commissioner, supra, was that the
event which reduced the original "underpayment" occurred after
the return at issue was filed.  The fact that each taxable year
is a separate year for income tax purposes was not discussed, nor
was it relied upon, in any of the other cases cited by the
majority.[3]  Consequently, the principle upon which these NOL
carryback cases are based is applicable to the present case.

---

[3]The concept of separate taxable years is clearly not
determinative.  We have stated that if the event creating the
deduction occurred in a separate prior year, the deduction would
be allowed to reduce the liability for the year at issue for
purposes of computing additions to tax.  Blanton Coal Co. v.
Commissioner, T.C. Memo. 1984-397 ("The basic principle to be
found in prior case law would permit reduction for carryforward
loss deductions and credits, but prohibit carryback loss
deductions and credits, when computing additions to tax.").

Petitioner had a duty to file an estate tax return as of a certain date and to pay the amount of the tax due on that date. Like a taxpayer entitled to carry back an NOL, petitioner here, did not incur, and therefore was not able to determine, the subsequently incurred expenses until after the estate tax return was required to be filed. Like the NOL carrybacks, these expenses could not have been deducted in computing the tax required to be shown on the estate tax return. Like NOL carrybacks, these later incurred expenses can be deducted only pursuant to proceedings subsequent to the filing of the return. See sec. 20.2053-1(b)(3), Estate Tax Regs.[1]

The fraud that is being penalized by section 6663(a) is complete when a fraudulent return is filed. In <u>Badaracco v. Commissioner</u>, 464 U.S. 386, 394 (1984), the Supreme Court explained that:

> fraud was committed, and the offense completed, when the original return was prepared and filed. * * * In short, once a fraudulent return has been filed, the case remains one "of a false or fraudulent return,"

[1]This is the same situation recognized by the Senate Finance Committee report that is quoted in the majority opinion p. 5.

> A taxpayer entitled to a carry-back of a net operating loss * * * will not be able to determine the deduction on account of such carry-back until the close of the future taxable year in which he sustains the net operating loss * * *. <u>He must therefore file his return and pay his tax without regard to such deduction,</u> and must file a claim for refund at the close of the succeeding taxable year when he is able to determine the amount of such carry-back. * * * [S. Rept. 1631, 77th Cong., 2d Sess., at 123 (1942), 1942-2 C.B. 504, 597; emphasis added.]

> regardless of the taxpayer's later revised conduct, for
> purposes of criminal prosecution and civil fraud
> liability under § 6653(b).  * * *

Since fraud is based on the facts and circumstances at the time the fraudulent return was filed, it makes sense that the facts and circumstances considered in determining the amount of the resulting penalty should be the same.  Courts addressing the fraud penalty examine the facts and circumstances in a time-specific manner, not only in determining if fraud existed, but also in determining the amount of the associated penalty.  See Arc Elec. Constr. Co. v. Commissioner, 923 F.2d 1005, 1009 (2d Cir. 1991) ("A taxpayer who commits a fraud in reporting taxes in one year may not, on account of a fortuitous carryback that later develops which eliminates tax liability for that same year, claim that the carryback wipes out the fraud as well.  Once fraud is demonstrated, it is, as it were, frozen in time, unaffected by subsequent events."), affg. on this issue and revg. and remanding T.C. Memo. 1990-30.

This same logic is reflected by the statutory language of section 6663(a) that imposes the penalty on the fraudulent "underpayment of tax required to be shown on a return."  This logic is also reflected in the legislative history of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(a), 103 Stat. 2106, 2395-2398, which introduced section 6663 and retained the provisions imposing interest on the fraud penalties from the date the return was required to be filed.

The bill retains the general rule of present law that interest on these penalties commences with the date the return was required to be filed. The committee believes this rule is appropriate because the behavior being penalized is reflected on the tax return, so that imposition of interest from this date will reduce the incentives of taxpayers and their advisors to 'play the audit lottery.' [H. Rept. 101-247, at 2234 (1989).]

The majority states that Congress used the phrase "tax required to be shown on a return" as a classification and did not intend that the penalty be based on the specific tax required to be shown on the fraudulent return on the filing date. See majority op. p. 9. I disagree. The statutory classification of situations covered by the section 6663(a) penalty is contained in section 6664. Section 6664(b) provides that the accuracy-related and the fraud penalties of sections 6662 and 6663, "shall apply only in cases where a return of tax is filed". Section 6664(b) specifically classifies the situations to which section 6663(a) applies. If the phrase "tax required to be shown on a return" in section 6663 only refers to the type of tax, as the majority suggests, the phrase would be surplusage. In construing the tax Code, words used should not be considered surplusage. D. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 (1932) (It is a cardinal rule of statutory construction that "effect shall be given to every clause and part of a statute."); Arc Elec. Constr. Co. v. Commissioner, supra at 1008.

The majority's interpretation will also produce an unintended inconsistency between the way in which the fraud

penalties in sections 6663 and 6651 are computed.  Prior to the
enactment of section 6663 in 1989, section 6653(b) imposed a
penalty for fraud, regardless of whether or not a return was
filed.  When Congress enacted section 6663 imposing a fraud
penalty for fraudulent returns, it added section 6651(f) imposing
a separate penalty for any fraudulent failure to file a return.
The penalty for fraudulent failure to file is imposed by using
the following statutory language:

> SEC. 6651(a) Addition to the Tax.--In case of failure--
>
> (1) to file any return required under authority of
> subchapter A of chapter 61 * * * there shall be added
> to the amount required to be shown as tax on such
> return * * * [15] percent of the amount of such tax if
> the failure is for not more than 1 month, with an
> additional * * * [15] percent for each additional month
> or fraction thereof during which such failure
> continues, not exceeding * * * [75] percent in the
> aggregate;  [Sec. 6651(a), (f); emphasis added.[5]]

The above-quoted language makes it clear that the section 6651
fraud penalty applies to the tax that was required to be shown on
a specific return on the specific date that such return was
required to be filed.  This statutory language literally
precludes any allowance for expenses incurred after the return
due date in computing the fraud penalty.  In 1989, when Congress
enacted separate fraud penalties for fraudulent returns and
fraudulent failures to file, there was nothing to indicate that

---

[5]The bracketed percentages are substituted into sec. 6651(a)
pursuant to sec. 6651(f) in cases where the failure to file is
fraudulent.

Congress intended to allow events occurring after the return due date to produce different results depending on whether or not a return was filed.

In defining the meaning of "underpayment" for purposes of this case, the majority holds that "the 'amount of tax imposed by this title' refers to the tax that 'is hereby imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States.' Sec. 2001(a)." See majority op. p. 4. But this can only be true if one looks at the tax required to be shown on the tax return on its due date. Section 6664(a) defines "underpayment" generally to mean "the amount by which any tax imposed by this title" exceeds the amount shown as the tax by the taxpayer on his return. The isolated phrase "tax imposed by this title" is much more inclusive than the majority holds. For example, in the very next section of the Code, section 6665(a)(2) provides:

> any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter. [Emphasis added.]

Likewise, section 6601(e)(1) provides:

> (1) Interest treated as tax.-- * * * Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax. [Emphasis added.]

Pursuant to these sections, any computation of the "tax imposed by this title" made without reference to the point in time that the return was required to be filed, would have to include both interest and penalties. The majority clearly does not contemplate that interest and penalties be included in "tax imposed by this title" for purposes of computing the "underpayment" to which the fraud penalty applies. However, the only way to avoid such a result is to interpret section 6663 as imposing the fraud penalty on the underpayment of tax that was required to be shown on the taxpayer's return at the time it was filed.[6] Prior to the 1989 enactment of sections 6663 and 6664, the fraud penalty provided for by section 6653(b) was based on an "underpayment" that was generally defined in section 6653(c) as a "deficiency" within the meaning of section 6211. Neither the fraud penalty nor interest is within the definition of a "deficiency" pursuant to sections 6211 and 6601(e). See White v. Commissioner, 95 T.C. 209 (1990); Estate of DiRezza v. Commissioner, 78 T.C. 19 (1982).

Finally, the purpose of the fraud penalty is to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938); Ianniello v. Commissioner, 98 T.C. 165, 180 (1992). The majority would allow a fraudulent taxpayer to reduce the penalty by costs incurred to fight the Government's

---

[6]The tax required to be shown on a timely filed return would not include any interest or penalty.

attempt to detect and recover fraudulently omitted tax and by interest charged for the period during which the fraudulently omitted tax was not paid.[1]  This thwarts the very purpose of the penalty.

Respondent's concern that the "government's reimbursement [through the fraud penalty] could be consumed by the * * * [estate's] counsels' fees and fees being paid to the trustees, who happen to be the beneficiaries of the estate", majority op. p. 12, should concern us as well.  This case appears to have been hotly contested.  The Court's initial opinion depicts a massive fraud that respondent proved by clear and convincing evidence. See Estate of Trompeter v. Commissioner, T.C. Memo. 1998-35. Under the majority's holding, for every dollar that the estate incurs in unsuccessfully fighting the deficiency and fraud penalty, it could potentially save more than $.96 in tax and penalties!

A simple hypothetical may help explain this:  Assume a 55-percent tax rate and a timely filed fraudulent return showing a taxable estate of $1,000.[2]  The estate reports and pays tax of $550 with the return.  Later, the value of the taxable estate (before postreturn expenses) is determined by the Commissioner to be $2,000.  The total amount of tax that should have been shown

---

[1]Petitioner is claiming postreturn administrative expenses of $926,274 and interest expenses in the amount of $4,167,275.

[2]This is just an example.  The 55-percent rate is applied to taxable estates exceeding $3 million.  Petitioner was clearly in the 55-percent bracket.

on the return was $1,100. This results in a $550 increase in tax over the tax reported on the return. The Commissioner also determines that the underpayment is due to fraud. Therefore, the estate would be liable for the additional $550 tax plus the fraud penalty in the amount of $412.50 (.75 x $550) for a total of $962.50 ($550 + $412.50).

Now assume that in the resulting litigation, respondent's determination is upheld on all points, but in contesting the case, the estate incurs expenses of $1,000. These expenses reduce the value of the taxable estate to $1,000, which in turn results in a total tax liability of $550 ($1,000 x .55), the same amount reported on the fraudulent return. Pursuant to the majority opinion, the estate would pay no additional tax and no fraud penalty. Even though the estate lost all of the issues in litigation and spent $1,000, its real out-of-pocket costs would not exceed $37.50.

The results that will occur under the majority's holding can be avoided by a reasonable interpretation of section 6663(a). Section 6663(a) should be interpreted as providing that the fraud penalty be imposed on the difference between the amount of tax that was required to be shown on the return and the amount that was actually shown on the return. This interpretation is supported by the words of section 6663, the language in related sections of the Code, case law, and common sense. There is simply no reason why we should interpret the statutory language

in a way that would produce a result contrary to the purpose of the statute.  See <u>Badaracco v. Commissioner</u>, 469 U.S. at 398.

COHEN, <u>C.J</u>., agrees with this dissent.