T.C. Summary Opinion 2002-42


UNITED STATES TAX COURT


JAMES J. COYLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

REGAL MOBILE HOME SALES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 12012-99S, 12061-99S.    Filed April 22, 2002.


<u>William James Kelly</u>, for petitioners.

<u>Randall B. Pooler</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  These cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petitions were filed.  The decisions to be entered are not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the

Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined that petitioners James J. Coyle (Mr. Coyle) and Regal Mobile Home Sales, Inc. (Regal), in these consolidated cases are liable for deficiencies, an addition to tax, and penalties as follows:

### James J. Coyle, docket No. 12012-99S

| Year | Deficiency | Penalty Sec. 6663 |
|------|-----------|-------------------|
| 1992 | $9,983 | $7,487 |
| 1993 | 5,284 | 3,962 |

### Regal Mobile Home Sales, Inc., docket No. 12061-99S

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6663 |
|------|-----------|--------------------------------|-------------------|
| 3/31/90 | $2,850 | – | $2,138 |
| 3/31/92 | 3,690 | – | 2,768 |
| 3/31/93 | 3,526 | – | 2,645 |
| 3/31/94 | 3,607 | $902 | 2,705 |

The issues for decision are:

(1) Whether Regal failed to report gross receipts from sales of mobile home wheels and axles for its tax years ending March 31, 1992 and 1993, of $13,948 and $45,741, respectively. Respondent also determined that Regal is entitled to a corresponding deduction for each year for commissions it paid Mr. Coyle. If we conclude that Regal omitted gross receipts from sales of wheels and axles, then Regal is allowed the

corresponding deductions.  Regal does not dispute the allowance of the corresponding deductions.

(2) Whether Mr. Coyle failed to report commission income from Regal for 1992 and 1993 of $21,130 and $18,816, respectively.

(3) Whether Regal is liable for section 6663 civil fraud penalties for its tax years ending March 31, 1990, 1992, 1993, and 1994, of $2,138, $2,768, $2,645, and $2,705, respectively.

(4) Whether Mr. Coyle is liable for section 6663 civil fraud penalties for 1992 and 1993 of $7,487.25 and $3,962.25, respectively.

(5) Whether the periods of limitations for assessment of underpayments of tax with respect to Regal and Mr. Coyle have expired.

Respondent also determined the following:  Regal is not entitled to claim a net operating loss (NOL) carryback of $18,995 to its tax year ending March 31, 1990, from the tax year ending March 31, 1992; Regal is not entitled to claim an NOL carryforward of $24,048 to its tax year ending March 31, 1994; Regal failed to report rental or installment sale income in its tax year ending March 31, 1992, of $4,496; Regal is liable for an addition to tax under section 6651(a)(1) for its tax year ending March 31, 1994; Regal is not entitled to a claimed bad debt deduction for its tax year ending March 31, 1992, of $26,358;

Regal is not entitled to a claimed deduction for State sales tax for its tax years ending March 31, 1992 and 1993, of $12,740 and $15,844, respectively; Regal failed to report volume rebate income for its tax year ending March 31, 1993, of $31,713; and Mr. Coyle failed to report dividend income from Regal in 1992 of $16,495.

Regal and Mr. Coyle did not present any evidence concerning these determinations. To some extent the adjustments to the claimed carryback and carryforward are affected by our findings and conclusions on the issues placed in dispute. To the extent they are not affected by the issues placed in dispute, we deem these determinations conceded.

The notice of deficiency mailed to Mr. Coyle increased the self-employment tax in 1992 and 1993 and decreased the earned income credit (EIC) in 1992 by $18. These computational adjustments depend on the adjustments to income for 1992 and 1993. Mr. Coyle has not disputed these adjustments. Therefore, we do not separately address them.

## Background

Some of the facts have been stipulated and are so found. At the time the respective petitions in these cases were filed, Mr. Coyle was a resident of Lakeland, Florida, and Regal's principal place of business was Lakeland, Florida.

Regal sold new mobile homes either from inventory located at its business premises or from orders placed with mobile home manufacturers. Regal also sold and traded used mobile homes. Mobile homes are transported on detachable wheels and axles. Upon the sale of a mobile home, a set-up crew provided by Regal installed the mobile home and removed the wheels and axles. The wheels and axles were then returned to Regal.

Mr. Coyle has been the president and a stockholder of Regal since its incorporation in 1983. In addition to preparing customer purchase orders for Regal, Mr. Coyle has been a salesman for Regal, and he hired and fired Regal's employees. During the years at issue, Mr. Coyle was at the Regal worksite on most workdays. Mr. Coyle was a majority shareholder with control over Regal. He acted on behalf of Regal, and Regal acted through him. Mr. Coyle signed Regal's Federal income tax returns.

After the sale of a mobile home and the return of the wheels and axles to Regal, Regal sold them to various purchasers including Marilyn and Robert Roach (Mr. and Mrs. Roach), who owned and operated Bob Roach Mobile Home Services, Inc. (Roach Mobile Home), Jerry Lee Gibson (Mr. Gibson), and Mr. Charles Vernon Pearce. Roach Mobile Home began purchasing wheels and axles from Regal in April 1991. Regal sold the wheels and axles for cash, which is the industry custom. All of Regal's employees were authorized to sell the wheels and axles in exchange for cash

from various purchasers. Mr. Coyle received the cash from the sales of wheels and axles. Regal and Mr. Coyle did not issue invoices to the purchasers of wheels and axles.

Regal and Mr. Coyle received receipts of purchase from Roach Mobile Home and Mr. Gibson that Mr. Coyle retained for a short but unspecified period. It was the practice of Roach Mobile Home for its driver who purchased and picked up wheels and axles to prepare a receipt of purchase indicating the seller of the wheels and axles and the amount paid for each item. Each receipt was a two-part ticket. The driver gave one-half of the receipt to the seller and returned the other half to the office of Roach Mobile Home. Roach Mobile Home kept a record of its purchases by entering information from each receipt into its computer. Roach Mobile Home's receipts from 1991 through 1993 indicate that Roach Mobile Home paid Regal the following amounts for wheels and axles:

| | |
|---|---|
| Apr.--Dec. 1991 | $6,681.25 |
| Jan.--Mar. 1992 | 7,267.00 |
| Apr.--Dec. 1992 | 37,783.25 |
| Jan.--Mar. 1993 | 7,957.25 |
| Apr.--Dec. 1993 | 26,658.00 |

It was the practice of Mr. Gibson to provide the seller of wheels and axles with a receipt and to retain a copy of the receipt in company records. Mr. Gibson usually paid the cash directly to Mr. Coyle or his father, Thomas Coyle, who also worked for Regal. If Mr. Gibson received delivery of the wheels

and axles from one of Regal's employees, Mr. Gibson would give cash to the employee and have that employee sign a receipt.  Mr. Gibson provided the Court with 13 receipts dated from July to December 1993 indicating that he paid Regal $8,041 for wheels and axles.  The additional item of omitted income determined for 1993 as to Mr. Coyle was $2,500 of income from sales of wheels and axles to Mr. Pearce.  Petitioner failed to present any evidence as to this adjustment.

During the years at issue, Regal employed a bookkeeper to keep its records.  The sales manager or the office manager would often make notations in Regal's books and records concerning sales of mobile homes.  In 1992, Regal purchased a computer system to better maintain its bookkeeping records.  Either Mr. Coyle or the bookkeeper would prepare the bank deposit slips for deposits made into Regal's bank accounts.  Petitioner, the bookkeeper, or any one of Regal's employees made deposits into Regal's bank accounts.  Regal did not produce copies of its books and records to respondent or at trial.

Regal's certified public accountant and tax return preparer, Steven D. Herman (Mr. Herman), reviewed Regal's books and records quarterly because he filed quarterly and annual tax returns for Regal.  He did not audit or analyze Regal's books and records. Mr. Herman did not rely on the original underlying documents when preparing Regal's returns because they were not available to him.

Instead, Mr. Herman used information prepared or provided by Regal's bookkeeper or Mr. Coyle in preparing Regal's tax returns. Mr. Herman requested that Regal provide him with documents such as checks, inventory statements on sales tax returns, bank statements, a listing of accounts receivable and notes payable, and deposit receipts.  He experienced difficulty obtaining the documents and information from Regal, however, and even when he received information, it was often incomplete.  Mr. Herman prepared certain books and records for Regal, a small portion of which he produced to the Court.

 Mr. Herman also prepared Mr. Coyle's tax returns for 1992 and 1993 using information prepared or provided by Mr. Coyle. Mr. Coyle would provide information in writing or orally.  Mr. Coyle was not clear as to whether he actually provided Mr. Herman with receipts he received from sales of wheels and axles.

On February 2, 1993, Mr. Coyle submitted an offer in compromise with an attached Form 443-A, Collection Information Statement for Individuals, to respondent, which respondent rejected.  Mr. Coyle resubmitted the offer in compromise dated December 3, 1993, which respondent accepted on August 3, 1994. As a result, Mr. Coyle compromised taxes due of $32,150.76 for a total payment of $6,000 for the 1986, 1989, 1990, 1991, and 1992 tax years.

The parties stipulated the fact of this offer in compromise. The record contains a copy of the offer in compromise dated February 2, 1993, and the amended offer in compromise dated December 3, 1993. Neither the stipulation nor copies of the offers provide any detail as to the amounts or bases for determination of liability for any of the tax years involved. We note that the original offer was submitted February 2, 1993, which is prior to the filing of the 1992 Federal income tax return. The record is further unclear whether there was an examination of the 1992 return and any additional tax determined and/or assessed before the acceptance of the offer in compromise.

Thus, it is not clear whether, upon issuing Mr. Coyle a notice of deficiency in connection with the case at hand, respondent was reopening the offer in compromise with respect to the 1992 tax year. See sec. 301.7122-1(c), Proced. & Admin. Regs. Mr. Coyle has not alleged that the issuance of the notice of deficiency in this case is an impermissible reopening of the offer in compromise, and since the record does not provide sufficient information in this regard, we decline to consider this issue. Id.

## Discussion

The primary issue in these cases is whether Regal omitted gross receipts from the sale of wheels and axles and, if so, whether Mr. Coyle omitted commission income received from Regal.

To the extent we conclude that there are underpayments of taxes, we must also decide whether the underpayments of taxes by Regal and Mr. Coyle are due to fraud under section 6663.

Regal and Mr. Coyle each allege that the 3-year period of limitations under section 6501(a) for each of the tax years at issue has expired and respondent is precluded from assessing any underpayments in tax.[1]

Respondent asserts that the periods of limitations have not expired under subsections (c)(1) and (e) of section 6501. Respondent determined that all or part of the underpayments in tax of Regal and Mr. Coyle were due to fraud under section 6663(a). Thus, respondent asserts that the taxes imposed against Regal and Mr. Coyle may be assessed at any time under section 6501(c)(1) and the periods of limitations had not expired for the tax years at issue at the time the notices of deficiency were issued. In the alternative, respondent relies upon section 6501(e) (substantial omission of gross income) in asserting that the periods of limitations have not expired with respect to Regal and Mr. Coyle.

Because an underpayment of tax is critical to a finding of fraud, we shall first consider whether Regal omitted gross

---

[1] Separate notices of deficiency were issued to Regal and Mr. Coyle on Apr. 15, 1999. There is no dispute that the notices of deficiency were mailed beyond the respective 3-year periods of limitations under sec. 6501(a).

receipts from sales of wheels and axles and, if so, whether Mr. Coyle omitted commission income.

1. Regal

Respondent determined that Regal failed to report gross receipts from sales of wheels and axles for the taxable years ending March 31, 1992 and 1993, of $13,948 and $45,741, respectively. Respondent allowed Regal corresponding deductions for commission expenses paid to Mr. Coyle for the tax years ending March 31, 1992 and 1993, of $13,948 and $45,741, respectively.

Gross income means all income from whatever source derived. Sec. 61. The Commissioner may use any reasonable means to reconstruct a taxpayer's income. Counts v. Commissioner, 774 F.2d 426, 428 (11th Cir. 1985), affg. T.C. Memo. 1984-561. When the Commissioner determines that a taxpayer received unreported income, the determination in the notice of deficiency must be "supported by 'some evidentiary foundation linking the taxpayer to the alleged income-producing activity.'" Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993) (quoting Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979), revg. 67 T.C. 672 (1977)), affg. T.C. Memo. 1991-636. The Commissioner need only provide a minimal showing that the taxpayer failed to report income. Id. The taxpayer bears the burden of proving that the notice of deficiency is arbitrary or

erroneous once the Court determines that the Commissioner provided the minimal evidentiary showing.[2]  <u>Gatlin v. Commissioner</u>, 754 F.2d 921, 923 (11th Cir. 1985) (citing <u>Jackson v. Commissioner</u>, 73 T.C. 394, 401 (1979)), affg. T.C. Memo. 1982-489.

Respondent determined on the basis of documentary evidence that Regal omitted gross receipts from sales of wheels and axles. We found Mr. Roach, Mrs. Roach, and Mr. Gibson to be credible witnesses.  The testimony of these witnesses further supported the contemporaneous receipts.  The receipts indicate that Regal received cash payments greater than the amounts it reported on its returns.

When asked why Regal did not report gross receipts from sales of wheels and axles as such on its returns, Mr. Coyle explained that he and Mr. Herman thought that it was "not something necessarily that needs to be broken out".  We find this assertion by Mr. Coyle not to be credible.

We conclude that Regal received gross receipts from sales of wheels and axles of $13,948 and $45,741 for the tax years ending

---

[2]  Petitioners bear the burden of proof with respect to the underpayments of tax.  Rule 142(a)(1).  Sec. 7491 does not shift the burden of proof to respondent with respect to the underpayments of tax because petitioners have neither alleged that sec. 7491 is applicable nor established that they complied with the requirements of sec. 7491(a)(2)(A) and (B) to substantiate items, maintain required records, and fully cooperate with respondent's reasonable requests.

March 31, 1992 and 1993, respectively. Those amounts were not reported on the returns for those years. We are also satisfied that Mr. Coyle ultimately received the amounts paid to Regal for the wheels and axles. Accordingly, Regal is entitled to deductions for commissions paid as determined by respondent, as discussed below, for the tax years ending March 31, 1992 and 1993, of $13,948, and $45,741, respectively.

While there is no doubt that Regal omitted gross receipts, the corresponding deductions for commissions paid result in no underpayments of tax with respect to sales of wheels and axles. However, the underpayments of tax and the deficiencies respondent determined for the years in issue are based on adjustments of other items including: (1) A disallowed deduction for claimed bad debts; (2) a disallowed deduction for State sales tax; and (3) omitted income from volume rebates. Regal did not present any evidence that would suggest that respondent's determinations were not correct as to these items.

On the basis of respondent's determination and Regal's failure to present evidence to establish that the determination is not correct, we would normally sustain the determination as to these items. However, since respondent relies on (1) fraud under sections 6663 and 6501(c)(1), and (2) substantial omission under section 6501(e) as affirmative defenses to the running of the period of limitations, we withhold any further consideration of

these adjustments until our discussion of the fraud penalty and the period of limitations.

2. Mr. Coyle

Respondent determined that Mr. Coyle failed to report commission income received from Regal of $21,130 in 1992 and $18,816 in 1993. The commission income consisted of the income which Regal received from sales of wheels and axles and which Mr. Coyle diverted from Regal. Mr. Coyle reported $23,920 in 1992 and $26,340 in 1993 of "other" income (not "commission" income) on his Federal income tax returns.[3]

In our discussion above, we have concluded that Regal received gross receipts from sales of wheels and axles and that the funds received were paid to Mr. Coyle. The discussion here provides further support for our conclusion that Mr. Coyle failed to report commission income as determined in the notice of deficiency.

Respondent elicited testimony from four of Regal's former employees concerning their involvement with sales of wheels and axles. All four provided credible testimony that Mr. Coyle was the person who received the cash from sales of wheels and axles or, if he was not available at that time, the cash would ultimately be turned over to him. Mr. Coyle has admitted that

---

[3] Regal paid its other salespeople a commission for each mobile home sold.

the cash from sales of wheels and axles went directly into his pocket. As Mr. Coyle explained at trial: "a lot of times it would come to me. Okay? And I would use it for my income, you know."

Mr. Coyle failed to provide any evidence with respect to respondent's determination for 1993 that he received $2,500 from Mr. Pearce from sales of wheels and axles.

Respondent elicited testimony from Mr. Herman concerning the nature of Mr. Coyle's income. Mr. Herman presumed Mr. Coyle received commission income from Regal, but the documentation did not support this. Mr. Herman explained that he "instructed Mr. Coyle that, being an officer of the company, the IRS generally required them to take wages, W-2s, and we could report the income from the W-2s and any withholding. During the course of those years, that was not done. He did not pay himself any payroll."

Respondent's revenue agent said that, at the audit, it was first explained to her that Regal paid Mr. Coyle commissions. Petitioners later "elaborated a little more, saying that it actually was wheel and axle income that came from the corporation that went directly to Mr. Coyle in lieu of commission income." Mr. Coyle testified that he never received commission income. We find Mr. Coyle's lack of clarity in reporting the nature of his income to be disingenuous, given that he controlled Regal.

- 16 -

We do not accept Mr. Coyle's testimony that the income he reported on his returns for 1992 and 1993 was his only income for those years. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We conclude that Mr. Coyle failed to report income received from Regal in 1992 and 1993 of $21,130 and $18,816, respectively.

3. Fraud

Respondent affirmatively alleges that Regal and Mr. Coyle are liable for civil fraud penalties under section 6663. Specifically, respondent claims that petitioners committed fraud because: Mr. Coyle directed Regal to maintain false books in which gross receipts from sales of wheels and axles were not recorded and ensured that Regal's and his own accountant was not provided with the receipts from the sales of wheels and axles; neither Regal nor Mr. Coyle recorded the cash received in Regal's books or deposited the money in any of Regal's bank accounts; Mr. Coyle ensured that Regal received cash when it sold wheels and axles; Mr. Coyle directed that cash from sales of wheels and axles be paid to him; Mr. Coyle substantially understated his income for 1992 and 1993; and Mr. Coyle's income tax return filing history indicates a consistent pattern of underreporting his income tax liability.

Section 6663 imposes a penalty of 75 percent on the portion of any underpayment of tax required to be shown on a return that

is due to fraud.  Fraud, under section 6663, is defined as an intentional wrongdoing designed to evade tax believed to be owing.  Conforte v. Commissioner, 692 F.2d 587, 592 (9th Cir. 1982), affg. in part and revg. in part 74 T.C. 1160 (1980); Neely v. Commissioner, 116 T.C. 79, 86 (2001) (citing Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223)).  When the Commissioner has alleged fraud under section 6663, the Commissioner has the initial burden of proving by clear and convincing evidence for the years at issue that some portion of the underpayment of tax is due to fraud.  Sec. 7454(a); Rule 142(b); see also Anastasato v. Commissioner, 794 F.2d 884, 889 (3d Cir. 1986), vacating T.C. Memo. 1985-101.  To satisfy the burden of proof, the Commissioner must show that: (1) An underpayment in tax exists, and (2) the taxpayer intended to evade taxes by concealing, misleading, or otherwise preventing the collection of taxes.  Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).  The Commissioner can prove by circumstantial evidence that the taxpayer intended to evade taxes by concealing, misleading, or otherwise preventing the collection of taxes.  Id. at 664.

Fraud is a question of fact to be resolved upon consideration of the entire record and is never presumed.  Estate of Pittard v. Commissioner, 69 T.C. 391, 404 (1977).  The Commissioner may draw reasonable inferences to establish

fraudulent intent.  Korecky v. Commissioner, 781 F.2d 1566 (11th Cir. 1986), affg. T.C. Memo. 1985-63.  Indicia of fraudulent intent include the following:  A pattern of consistent underreporting of income, Parks v. Commissioner, supra at 664; the filing of false documents, Stephenson v. Commissioner, 79 T.C. 995, 1007 (1982), affd. 748 F.2d 331 (6th Cir. 1984); destruction of records, Prokop v. Commissioner, 254 F.2d 544 (7th Cir. 1958), affg. T.C. Memo. 1957-75; inadequate and incomplete records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, and failure to cooperate with tax authorities, Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

If the Commissioner establishes that any portion of the underpayment is attributable to fraud, then the entire underpayment for that tax year shall be treated as attributable to fraud, unless the taxpayer can establish that a portion is not attributable to fraud.  Sec. 6663(b).  The term "underpayment" is defined by section 6664(a) to mean the amount by which any tax imposed by this title exceeds the excess of (1) the sum of (A) the amount shown as the tax by the taxpayer on his return, plus (B) amounts not so shown previously assessed (or collected without assessment), over (2) the amount of rebates made.  Estate

of <u>Trompeter v. Commissioner</u>, 111 T.C. 57, 58 (1998).  An underpayment under sections 6663 and 6664(a) has the same meaning as a deficiency in section 6211(a).

To prove fraud respondent has presented evidence of and relied on Regal's conduct with respect to the omitted gross receipts from sales of wheels and axles.  However, as a result of the corresponding deductions determined and allowed, these adjustments do not result in underpayments of tax.  The underpayments of tax come from other items (i.e., the denied bad debt deduction, the denied deductions for State sales taxes, and unreported volume rebate income).

To prove fraud under section 6663(b), respondent is required to prove by clear and convincing evidence that a part of the underpayment for each year is attributable to fraud.  Respondent has not clearly and convincingly proven that any part of the underpayment of tax due from Regal for the tax years ending March 31, 1992 and 1993, is attributable to fraud.  See <u>Kreimer v. Commissioner</u>, T.C. Memo. 1983-672.  Accordingly, we conclude that Regal is not liable for the fraud penalties under section 6663.

We now consider whether Mr. Coyle is liable for the fraud penalties.  On the basis of our discussion above, we are satisfied that there is an underpayment of tax with respect to commission income required to be shown on each of Mr. Coyle's

Federal income tax returns for 1992 and 1993. We review this record further to consider whether the underpayments of tax by Mr. Coyle are due to fraud within the meaning of section 6663.

When asked at trial how he kept his records on sales of wheels and axles, Mr. Coyle responded as follows:

Q    So you get the cash. Are you – you're not recording it anywhere or booking it anywhere?
A    Yes. I would keep my records, you know, basically, you know, to justify my income. Yes.
Q    And what kind of records would you keep?
A    I'd basically make notations, you know, on a monthly basis and then accumulate it at the end of the year and then give it to Herman for my income.
Q    So –
A    Which, you know, is not the best way in the world to do it, you know. But, you know, that's the way I was doing it.
Q    You would book each receipt of cash from wheel and axle income -
A    Right.
Q    – to your own records, not the records of Regal?
A    Right.
Q    To your own records?
A    Yes. Because I was getting the benefit of it at that particular time.
Q    And where are those records?
A    I don't know now.

Mr. Coyle did not provide Mr. Herman with information or receipts reflecting income from sales of wheels and axles.

Testimony from Mr. Roach, Mrs. Roach, and Mr. Gibson lead us to the conclusion that it was the practice of their respective businesses not only to keep records for themselves of cash purchases of wheels and axles from Regal, but also to provide Regal or Mr. Coyle with copies of the receipts. As stated previously, we found Mr. Roach, Mrs. Roach, and Mr. Gibson to be

credible witnesses. Mr. Coyle admitted that he received the receipts but did not keep them. Mr. Coyle's counsel explained that Mr. Coyle "would reconcile his books and get with his tax man at the end of the tax year, give this information to him, and then, he had no need to keep these receipts." We are not convinced that an experienced businessperson such as Mr. Coyle would not understand the need to keep receipts. See Korecky v. Commissioner, supra.

Mr. Coyle hired Mr. Herman to prepare his Federal income tax returns. Mr. Herman testified that Mr. Coyle did not provide him with many original records and documents when he was preparing Regal's and Mr. Coyle's tax returns. Rather, Mr. Coyle provided him with totals of dollar amounts. Mr. Herman's testimony conflicts with Mr. Coyle's testimony because Mr. Coyle had asserted that he provided receipts to Mr. Herman. We are inclined to accept Mr. Herman's testimony.

Mr. Coyle and respondent entered into an offer in compromise for 1986, 1989, 1990, 1991, and 1992. In a statement attached to his offer in compromise, Mr. Coyle indicated that he was "employed as a mobile home salesman". From the facts in the record, it is apparent that during many of those years Mr. Coyle was not only an employee, but he was also a majority shareholder with control over Regal. Mr. Coyle's dishonesty in his prior dealings with respondent is an indication of fraud.

Mr. Coyle's testimony about the amount and type of income he received from Regal was at best vague and, at worst, evasive. We conclude that Mr. Coyle's testimony was self-serving and lacked credibility. See Tokarski v. Commissioner, 87 T.C. at 77.

On the basis of the entire record, we conclude that the underpayments of tax due from Mr. Coyle for 1992 and 1993 were due to fraud. We sustain respondent's determinations of fraud penalties under section 6663 with respect to Mr. Coyle for 1992 and 1993.

4. Period of Limitations

a. Regal

We have concluded that Regal's underpayments of tax were not due to fraud. Thus, section 6501(c)(1) does not prevent the running of the periods of limitations with respect to Regal.

We look to whether the periods of limitations are open under section 6501(e). Section 6501(e) extends the period within which the Commissioner must assess an underpayment of tax to 6 years from the date the return was filed. Section 6501(e) is applicable if a taxpayer omits from gross income an amount properly includable which is greater than 25 percent of the amount of gross income stated in the return. "Gross income" means, in the case of a trade or business, the total of the amounts received or accrued from the sale of goods or services (if required to be shown on the return) before reducing it by the

cost of the sales or services. Sec. 6501(e)(1)(A)(i); sec. 301.6501(e)-1(a)(1)(ii), Proced. & Admin. Regs. An item is not considered omitted from the return if its nature and amount are sufficiently disclosed in the return or any schedule or statement attached to the return. Sec. 301.6501(e)-1(a)(1)(ii), Proced. & Admin. Regs.

We further note that under section 6501(h), a deficiency attributable to an NOL carryback may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the NOL which results in the carryback may be assessed.

Section 6501(e) is of no assistance to respondent for the period ending March 31, 1992, since the notice of deficiency was mailed more than 6 years after the filing of the return. Further, since the underpayment determined with respect to Regal for the tax year ending March 31, 1990, is attributable to the disallowance of the NOL carryback from the tax year ending March 31, 1992 (the year in which Regal claimed the loss arose), the period during which the underpayment may be assessed has expired under section 6501(h). See Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 274 (1990).

Respondent does not specifically allege[4] that Regal omitted from gross income for the taxable years ending March 31, 1993 and 1994, amounts properly includable that are greater than 25 percent of the amounts stated in the returns under section 6501(e)(1)(A)(i).  Regal reported gross income of $379,221 for the year ending March 31, 1993, and $409,996 for the year ending March 31, 1994.  See Colony, Inc. v. Commissioner, 357 U.S. 28 (1958) (concluding that Congress intended to extend period of limitations under statutory predecessor to section 6501(e)(1)(A)(i) when gross receipts are understated on return).  Respondent determined Regal omitted gross income of $79,454 from the return for the tax year ending March 31, 1993.  This amount is not greater than 25 percent of the amount of gross income stated in the return.  Respondent did not determine that Regal omitted gross income from its return for the tax year ending March 31, 1994, under section 6501(e)(1)(A) because respondent denied an NOL carryforward that was not an item omitted from the return.  Sec. 301.6501(e)-1(a)(1)(ii), Proced. & Admin. Regs.  Accordingly, section 6501(e) is not applicable to extend the periods of limitations for either of the tax years ending March 31, 1993 or 1994.

---

[4]  The Court permitted petitioners to raise the bar of the statute of limitations at trial and further permitted respondent to make general affirmative allegations as to the basis for the exceptions to the normal 3-year period of limitations under sec. 6501(a).

b. <u>Mr. Coyle</u>

Because the underpayments of tax due from Mr. Coyle were attributable to fraud under section 6663, respondent is not barred from assessing the deficiencies determined against Mr. Coyle for 1992 and 1993. Sec. 6501(c)(1). Because we have concluded that the periods of limitations have not expired under section 6501(c)(1) with respect to Mr. Coyle, we need not consider whether section 6501(e) is applicable.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for respondent in docket No. 12012-99S and for petitioner in docket No. 12061-99S</u>.